THE STATE EX REL. WILKINSON ET AL. v. REED, JUDGE, ET AL.

[Cite as *State ex rel. Wilkinson v. Reed*,
99 Ohio St.3d 106, 2003-Ohio-2506.]

(No. 2003–0727—Submitted May 13, 2003—Decided May 16, 2003.)

**Per Curiam.**

{¶ 1} On March 1, 2000, the state of Ohio and the Ohio Civil Service Employees Association, AFSCME Local 11, AFL–CIO, entered into a collective bargaining agreement effective from March 2000 through February 28, 2003. The union, which includes corrections officers employed by relator Ohio Department of Rehabilitation and Correction ("ODRC"), is the sole and exclusive bargaining representative for approximately 37,000 public employees. The collective bargaining agreement contains a five-step grievance procedure culminating in final and binding arbitration.

{¶ 2} In January 2003, ODRC announced the closure of Lima Correctional Institution ("LCI"), a state prison, effective July 12, 2003. In order to comply with various collective bargaining agreements, timelines were developed to implement the layoff process. ODRC had determined that closing LCI provided the "most effective means of responding to the on-going budget deficiencies."

{¶ 3} In April 2003, the union filed a grievance challenging the ODRC decision to close the prison. The union claimed that the ODRC rationale for closing the prison was flawed and that the state had failed to bargain on the issue of closing the prison. On April 11, 2003, following a hearing on the grievance, ODRC denied it.

{¶ 4} On April 14, 2003, instead of proceeding with the next step in the grievance procedure outlined in the collective bargaining agreement or filing an unfair labor practice charge against the state, the union filed a complaint in the Allen County Court of Common Pleas, a respondent herein, against ODRC, its director, Reginald A. Wilkinson, LCI Warden Terry Tibbals, the Office of Collective Bargaining of Ohio of the Ohio Department of Administrative Services,

and its deputy director, Steven Loeffler, all relators in this action. In its complaint, the union alleged that the relators' refusal to bargain with the union over their decision to close LCI, reassign bargaining-unit work, relocate bargaining-unit work, and lay off bargaining-unit employees violated R.C. 4117.09(B)(1), 4117.11(C), and the parties' collective bargaining agreement.

{¶ 5} The union requested a temporary restraining order "preventing [relators] from closing LCI, reassigning bargaining unit work, relocating bargaining unit work or lay[ing] off [ODRC] employees until full good faith bargaining on that subject has resulted in an agreement or ultimate good faith impasse." The union also requested a preliminary and/or permanent injunction "prohibiting [relators] from closing LCI and preserv[ing] the status quo keeping LCI open beyond [relators'] expected closure date with the bargaining unit members continuing to work at that location until good faith bargaining on that subject has resulted in an agreement or ultimate good faith impasse." The union did not allege anything about its grievance, nor did it specifically request an injunction against the prison closure and layoff of bargaining-unit employees pending the arbitration of its grievance.

{¶ 6} The trial court denied the union's request for an ex parte temporary restraining order and set the matter for consideration on April 16. On April 16, relators moved to dismiss the union's action or change venue. In their motion, relators contended that the trial court lacked jurisdiction over the union's claims. Respondent Judge Jeffrey L. Reed of the common pleas court took the matter under advisement and gave the union time to respond.

{¶ 7} Judge Reed then heard evidence concerning the union's request for a temporary restraining order. A union employee testified that the union could have filed an unfair labor practice charge with the State Employment Relations Board ("SERB") to challenge the state's refusal to bargain over the LCI closing. Instead, the union decided as a matter of legal strategy to seek relief in the common pleas court. Relators presented affidavits stating that the daily payroll of LCI was $78,025 and that a restraining order stopping the prison-closing process would cause irreparable harm to ODRC. Relators noted that to close LCI on the scheduled date of July 12, 2003, ODRC needed to supply the union's members with layoff notices between April 17 and 23.

{¶ 8} After the hearing, Judge Reed granted a temporary restraining order to prevent relators "from implementing the paper lay-off procedure under Article 18 of the Collective Bargaining Agreement at Lima Correctional Institution until after a full hearing on the [union's] request for a preliminary injunction on April 30, 2003." Judge Reed conditioned the temporary restraining order on the union's posting of a $50,000 surety bond or a $10,000 cash bond.

{¶ 9} On April 17, 2003, on the union's emergency motion, Judge Reed amended the temporary restraining order to further restrain relators "from transferring inmates out of LCI for the purpose of furthering the planned closure of that facility in July 2003." Judge Reed recognized that the trial court "may very well not have jurisdiction to address the merits of the [union's] grievance against [relators] since that grievance has rightfully been processed according to terms of the CBA" and that the court "may not have the right to address any perceived unfair labor practice." Nevertheless, Judge Reed determined that the trial court had "equitable jurisdiction to maintain the status quo of the parties while the grievance/arbitration process is taking place to protect both parties' guaranteed right to effectively arbitrate their labor dispute and to protect the well recognized public interest in enforcing the arbitration clause in the CBA and to uphold the general favor that arbitration enjoys in Ohio."

{¶ 10} On the day that the trial court issued the amended temporary restraining order, the state and the union agreed on the procedure to be used for the LCI closure and layoffs. The state and the union did not agree on the propriety of the closure and layoffs in the agreement. On April 22, relators moved to dissolve the trial court's April 16 and 17 temporary restraining orders.

{¶ 11} On April 24, 2003, relators filed this action for a writ of prohibition to prevent respondents from exercising further jurisdiction over the union's case. Relators also filed a motion in which they requested an emergency peremptory or alternative writ. On April 25, we shortened the response time from 21 days to 12 days. On May 7, respondents filed an answer and a memorandum in opposition to relators' motion for emergency relief, and the union filed a motion to intervene and an answer. The city of Lima and the Allen County Board of Commissioners also filed motions to intervene.

{¶ 12} This cause is now before the court for our S.Ct.Prac.R. X(5) determination.[1]

### S.Ct.Prac.R. X(5) determination

{¶ 13} We must now consider whether dismissal or the issuance of a peremptory or an alternative writ is warranted.[2]

---

1. We grant the union's motion to intervene. We deny the motions of Lima and the Allen County Board of Commissioners to intervene because they failed to comply with Civ.R. 24(C). See *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 144, 656 N.E.2d 1277; *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 70, 647 N.E.2d 769.

2. {¶ a} On May 14, 2003, the union filed a "notice of change of circumstances and settlement" as well as a "notice of settlement and settlement agreement" concerning the trial court proceeding. These filings indicate that in the trial court case, relators moved to compel arbitration under R.C. 2711.02 and requested a stay of the underlying proceedings. The union did not object to the stay,

{¶ 14} If an inferior court patently and unambiguously lacks jurisdiction over the cause, a writ of prohibition will be granted to prevent the future unauthorized exercise of jurisdiction and to correct the results of previous jurisdictionally unauthorized actions. *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 24.

{¶ 15} The union's common pleas court case is premised on alleged violations of R.C. 4117.09(B)(1), R.C. 4117.11(C), and the parties' collective bargaining agreement. Although the union couches its complaint's allegations in this manner, the wording used is insufficient in and of itself to vest jurisdiction in the common pleas court. See, e.g., *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49, ¶ 21 (mere fact that employee couched allegations of application to vacate arbitration award in language comparable to R.C. 2711.10 is insufficient to vest jurisdiction in common pleas court to resolve employee's claim of unfair representation).

{¶ 16} "Exclusive jurisdiction to resolve charges of unfair labor practices is vested in SERB in two general areas: (1) where one of the parties files charges with SERB alleging an unfair labor practice under R.C. 4117.11; or (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11." *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas* (1996), 76 Ohio St.3d 287, 289, 667 N.E.2d 929.

{¶ 17} Respondents assert that "[b]y its terms, the Union's complaint merely alleges that the State's closing of the prison, and the activities associated therewith, are subjects of mandatory bargaining *that must be pursued under the grievance/arbitration procedures made a mandatory part of arbitration agreements under R.C. 4117.09(B)(1).*" (Emphasis added.) The union's complaint, however, is devoid of any allegations concerning arbitration or the five-step grievance procedure. Instead, the union's complaint challenges relators' refusal to bargain about the closing of LCI and the transfer and layoff of bargaining-unit employees.

{¶ 18} Here, as with the underlying claims in *Nadel* and *Fraternal Order of Police*, the union's claims allege conduct that would constitute an unfair labor

---

and on May 14, the trial court stayed the case pursuant to the parties' agreement pending arbitration. The trial court ordered that the status-quo injunction that it had previously ordered would remain in effect pending the arbitration.

{¶ b} These developments do not moot this case. In moving to compel arbitration, relators specified that they did not concede that the trial court had jurisdiction over the claims raised in the union's complaint. Further, relators have not dismissed this case. In addition, respondents have not terminated their exercise of jurisdiction in the case. Moreover, the union does not specifically assert in its May 14 filings that this case is moot. Finally, the interest of Ohio taxpayers is at stake. Therefore, we proceed to the merits of this case.

practice, i.e., a violation of R.C. 4117.11(A)(5),[3] by the failure of relators and the state to collectively bargain over their decision to close LCI and lay off and transfer ODRC employees.

{¶ 19} Moreover, despite the union's reliance on R.C. 4117.09(B)(1), the Court of Appeals for the Eighth Appellate District held that this statute "does not provide a right to an original action in the court of common pleas." *Johnson v. Ohio Council Eight* (2001), 146 Ohio App.3d 348, 352, 766 N.E.2d 189. Instead, R.C. 4117.09(B)(1) merely "requires that any collective bargaining agreement contain a two step procedure—a grievance procedure with arbitration first, and ultimately the right to file in common pleas court." Id. SERB has initial and exclusive jurisdiction over any grievance for an unfair labor practice. Id. at 351, 766 N.E.2d 189. Respondents do not argue that *Johnson* is either distinguishable or incorrectly decided.

{¶ 20} Furthermore, if a collective bargaining agreement between a public employer and an exclusive employee representative "provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations *are subject solely to that grievance procedure * * *.*" (Emphasis added.) R.C. 4117.10(A). Insofar as the union claims that relators' actions violated the collective bargaining agreement, binding arbitration is its exclusive remedy.

{¶ 21} Thus, Judge Reed and the trial court lack jurisdiction to consider the claim. See, generally, *Brannen v. Kings Local School Dist. Bd. of Edn.* (2001), 144 Ohio App.3d 620, 628, 761 N.E.2d 84 ("to the extent that appellants claim that the actions of [the board of education] violated their rights under the collective bargaining agreement, binding arbitration is their exclusive remedy and the trial court had no jurisdiction to consider the merits of their complaint"); *Null v. Ohio Dept. of Mental Retardation & Developmental Disabilities* (2000), 137 Ohio App.3d 152, 738 N.E.2d 105 (final and binding arbitration clause of collective bargaining agreement divested common pleas court of jurisdiction over state-law claim); *Bryant v. Witkosky* (Mar. 29, 2002), Portage App. No. 2001–P–0047, 2002 WL 480078 (common pleas court lacks jurisdiction over settlement agreements arising out of public employee collective bargaining agreement); *Middleton v. State ex rel. Devies,* Stark App. No. 2001CA00366, 2002-Ohio-3481, 2002 WL 1467773, ¶ 48 ("the trial court lacked jurisdiction to interpret the Collective Bargaining Agreement prior to completion of this necessary predicate of the arbitration process").

---

3. Under R.C. 4117.11(A)(5), it is an unfair labor practice for a public employer, its agents, or representatives to "[r]efuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code."

{¶ 22} As SERB noted in dismissing a comparable unfair labor practice charge filed by the same union when the state recently closed another correctional institution, "any alleged contractual violations would be best addressed in the parties' grievance-arbitration process." *Ohio Civ. Serv. Emp. Assn., AFSCME, Local 11, AFL–CIO v. Ohio Dept. of Rehab. & Corr.* (Apr. 4, 2002), 19 Ohio Pub. Emp. Rep. ¶ 1460.

{¶ 23} Judge Reed nevertheless relied on *Toledo Police Patrolman's Assn., Local 10, IUPA, AFL–CIO–CLC v. Toledo* (1998), 127 Ohio App.3d 450, 713 N.E.2d 78, to support the trial court's assertion of equitable jurisdiction to issue a status-quo injunction pending the determination of arbitrability of the union grievance. The union also cites this case in its motion to intervene.

{¶ 24} *Toledo Police Patrolman's Assn.,* however, is distinguishable. In that case, the union specifically requested "a temporary restraining order enjoining the city from instituting one-officer patrol units *until the issue was arbitrated under the procedure set forth in the collective bargaining agreement.*" (Emphasis added.) Id., 127 Ohio App.3d at 456, 713 N.E.2d 78. By contrast, the union here sought injunctive relief pending relators' bargaining over the closure of LCI and the layoff and transfer of ODRC employees. It did not seek injunctive relief pending its pursuit of arbitration under the parties' collective bargaining agreement. In fact, as noted previously, there is no allegation in the union's underlying complaint about the grievance procedure or, for that matter, that the union even filed a grievance or pursued arbitration. Therefore, *Toledo Police Patrolman's Assn.* does not support the trial court's exercise of jurisdiction over the union's claims.

{¶ 25} Respondents now also cite *Boys Markets, Inc. v. Retail Clerks Union, Local 770* (1970), 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, and *Lever Bros. Co. v. Internatl. Chem. Workers Union, Local 217* (C.A.4, 1976), 554 F.2d 115, in support of their exercise of further jurisdiction in this case.

{¶ 26} These cases, however, interpreted federal labor provisions rather than R.C. 4117.10(A).

{¶ 27} More important, it is not clear whether the parties who sought injunctive relief in those cases specified, as did the union in *Toledo Police Patrolman's Assn.,* that the relief they were seeking was an injunction preserving the status quo pending arbitration.

{¶ 28} In addition, following *Boys Markets,* the United States Supreme Court emphasized that "it [is] clear that a *Boys Markets* injunction pending arbitration should not issue unless the [disputed action] is arbitrable." *Jacksonville Bulk Terminals, Inc. v. Internatl. Longshoremen's Assn.* (1982), 457 U.S. 702, 721, 102 S.Ct. 2672, 73 L.Ed.2d 327. Here, the agreement provides that the union be given advance notice if the state "plans to close an institution or part thereof" and

that the union be given only the "opportunity to *discuss* the planned closure with the Employer." (Emphasis added.) The agreement does not provide that this specific action must be bargained. See *Internatl. Union United Auto., Aerospace & Agriculture Implement Workers of Am., UAW v. Lester Eng. Co.* (C.A.6, 1983), 718 F.2d 818 (union not entitled to status-quo injunction pending arbitration where decision of employer to close manufacturing facility was not arbitrable). Therefore, the cited federal precedent does not require a contrary result.

{¶ 29} Even assuming that this federal labor law is considered persuasive authority here, "injunctions generally may not be issued simply to forbid an employer's allegedly improper acts when the injunction is not in aid of arbitration." 5 Lareau, National Labor Relations Act: Law and Practice (2 Ed.2002) 41–35, Section 41.08[3][c]. Yet this is the very relief that the union requests in its common pleas court complaint: to forbid the state and relators from proceeding with the closure of LCI unless they engage in collective bargaining on the issue. In fact, in its answer here, the union admits relators' allegation that "[t]he premise of [its] complaint was that the State failed to engage in bargaining with the union regarding the decision to close Lima Correctional Institution, in accordance with the collective bargaining agreement between OCSEA and the State of Ohio." (Complaint, ¶ 8; Int. Resp. Answer, ¶ 1.) The union never requested the status-quo injunctive relief pending arbitration that the trial court entered here. Rather, it appears to have deliberately chosen, as part of its legal strategy, to avoid alleging anything about its previously filed grievance or the five-step grievance procedure in its complaint.

{¶ 30} Based on the foregoing, Judge Reed and the trial court patently and unambiguously lack jurisdiction over the union's claims. Because it appears beyond doubt that relators are entitled to the issuance of a writ of prohibition, we grant a peremptory writ. *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas* (2000), 88 Ohio St.3d 447, 452, 727 N.E.2d 900. Furthermore, because the relators will lose a significant amount of money, we grant the peremptory writ immediately.

Writ granted.

Moyer, C.J., Resnick, Cook, Lundberg Stratton and O'Connor, JJ., concur.

F.E. Sweeney, J., dissents.

Pfeifer, J., dissents.

---

**Pfeifer, J., dissenting.**

{¶ 31} Granted, the relief sought by the union in its requests for a temporary restraining order and a preliminary and/or permanent injunction was broad.

However, Judge Reed tailored the temporary restraining order he issued to fit within what he was jurisdictionally empowered to do. The trial court properly determined that it had "equitable jurisdiction to maintain the status quo of the parties while the grievance/arbitration process is taking place to protect both parties' guaranteed right to effectively arbitrate their labor dispute and to protect the well recognized public interest in enforcing the arbitration clause in the CBA and to uphold the general favor that arbitration enjoys in Ohio." Judge Reed has carefully limited his exercise of jurisdiction to exclude any matters that are within the exclusive jurisdiction of SERB or that fall under the terms of the CBA. The parties have now agreed to enter arbitration in this case, and the trial court's exercise of jurisdiction will make that arbitration meaningful. The trial judge correctly prevented the state from locking the prison and throwing away the keys before the important issues between the parties could be resolved.

{¶ 32} Moreover, Judge Reed's jurisdiction could be invoked under other theories. Given the fact that the Lima Correctional Institution was created by an Act of the General Assembly and that the closing appears to be undertaken by an administrative act of the ODRC without legislative consultation and approval, it would seem that there are legitimate legal issues that may be appropriately litigated in Judge Reed's court. Those issues are vital to the interests of the state and the local community. The question of who has the authority to close institutions is of broad interest to the General Assembly, the Governor, and to citizens across the state wherever legislatively created state facilities are located.

---

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Elizabeth T. Smith, Chief Counsel, Stephen P. Carney, Senior Deputy Solicitor, Richard N. Coglianese and Sloan T. Spalding, Assistant Attorneys General, for relators.

David E. Bowers, Allen County Prosecuting Attorney; Anthony L. Geiger and Kevin Hawley, for respondents.

Crabbe, Brown & James, L.L.P., and Andrew G. Douglas, for intervening respondent Ohio Civil Service Employees Association.