[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dir., Ohio Dept. of Agriculture v. Forchione,* Slip Opinion No. 2016-Ohio-3049.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3049

THE STATE EX REL. DIR., OHIO DEPARTMENT OF AGRICULTURE, *v.*

FORCHIONE, JUDGE; HUNTSMAN ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dir., Ohio Dept. of Agriculture v. Forchione,* Slip Opinion No. 2016-Ohio-3049.]

*Prohibition—R.C. Chapter 935—Dangerous Wild Animals and Restricted Snakes Act—Director of Ohio Department of Agriculture has exclusive authority to implement and enforce R.C. Chapter 935, including the removal of dangerous wild animals—R.C. 935.20(D) allows an owner of dangerous wild animals that were removed by the director to request an adjudication in accordance with R.C. Chapter 119—Judge patently and unambiguously lacks jurisdiction over owner's action seeking a temporary restraining order and an injunction—Writ granted.*

(No. 2016-0729—Submitted May 10, 2016—Decided May 18, 2016.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In 2012, the Ohio legislature enacted the Ohio Dangerous Wild Animals and Restricted Snakes Act, R.C. Chapter 935, to regulate the acquisition, possession, care, sale, and transfer of "dangerous wild animals." Under that statutory scheme, no person may possess a dangerous wild animal after January 1, 2014, without a permit from the Ohio Department of Agriculture, unless the owner falls under one of the statute's exemptions. R.C. 935.02(A) and (B), 935.05(A), 935.07(A), and 935.101(A).

{¶ 2} Intervening respondent Cynthia Huntsman is an owner of multiple species of wild animals that are regulated by the act. Huntsman has no permit and has not submitted an application to obtain one. After obtaining a warrant to search her premises, relator, the Ohio Department of Agriculture ("ODA"), executed an administrative order under R.C. 935.20, and ordered the transfer of multiple dangerous wild animals found in her facility to a temporary holding facility established by the ODA. The next day, respondent, Stark County Common Pleas Court Judge Frank G. Forchione, granted Huntsman a temporary restraining order against the ODA, ordered the ODA to return the seized animals to Huntsman by May 19, 2016, and scheduled a preliminary injunction hearing for the same day.

{¶ 3} Relator, David Daniels, in his capacity as the director of the ODA, seeks a writ of prohibition to prevent Judge Forchione from continuing to exercise jurisdiction over the case in which he granted the restraining order, *In re Huntsman Transfer of Dangerous Wild Animals*, Stark County C.P. case No. 2016 MI 138. Judge Forchione opposes this request on the merits. Intervening respondents, Cynthia M. Huntsman and the farm she operates, Stump Hill Farm, Inc., have filed a motion to dismiss and also oppose this request on the merits. We grant a peremptory writ of prohibition to prevent Judge Forchione from proceeding in the underlying case and order him to vacate his previous orders.

## Background

### *The Act*

{¶ 4} In 2011, in Zanesville, Ohio, authorities were forced to kill numerous dangerous animals that had been released from a private preserve by an owner who later committed suicide. In response, the General Assembly passed the Dangerous Wild Animals and Restricted Snakes Act, R.C. Chapter 935, which became effective on September 5, 2012. The act tasks the ODA with implementing and enforcing a comprehensive statutory scheme regarding the registration and control of dangerous wild animals.

{¶ 5} Under R.C. 935.20(A), the ODA has the authority to initiate an investigation if it has reason to believe that a person possesses a dangerous wild animal without a permit. If the ODA believes that an owner of dangerous wild animals has violated the statute, it may quarantine the animals on site and restrict any movement on and off the property. R.C. 935.20(A). Alternatively, the ODA may order the immediate transfer of the animals under an administrative transfer order. *Id.* If transfer is needed, the ODA may house the animals at any facility approved for this purpose. R.C. 935.20(A) and (K). The act vests these powers exclusively in the director of the ODA.

{¶ 6} The owner may request a hearing to dispute either a quarantine or transfer action, and the administrative review includes a hearing, objections, and judicial review under R.C. 119.12. R.C. 935.20(D). Only after the remedies are exhausted may the director initiate proceedings for the permanent seizure of the animals. R.C. 935.20(H).

{¶ 7} As part of his investigatory powers, the director or his designee may enter at reasonable times onto property where dangerous wild animals are located. R.C. 935.19(A)(1). To enter such property, the director must obtain the owner's consent. However, if the owner refuses to grant consent, the director may obtain a search warrant from a court of competent jurisdiction to enter and search the

premises for evidence of any violation of the act, upon a showing of probable cause. R.C. 935.19(A)(2) and (3).

*Facts*

{¶ 8} Under R.C. 935.04, Huntsman, in 2012, registered with the ODA two Syrian brown bears, two baboons, six black bears, one bobcat, one chimpanzee, two North American cougars, one black panther, two albino Burmese pythons, two Siberian tigers, eight Bengal tigers, one serval, two American alligators, two African lions, and two gray timber wolves. All of these animals are regulated by the act. R.C. 935.01. Under the act, all owners of dangerous wild animals were required to obtain a permit to possess them by January 1, 2014. R.C. 935.05(A), 935.07(A), and 935.101(A).

{¶ 9} Huntsman did not apply for any type of wild-animal permit. Rather, she claimed that she was in the process of obtaining accreditation from the Zoological Association of America ("ZAA") and therefore that she was exempt from the permit requirements. R.C. 935.03(B)(1) states that the permit requirements do not apply to facilities that are accredited members of the ZAA and licensed under the United States Department of Agriculture.

{¶ 10} The ODA notified Huntsman in early February 2014 that she had failed to submit an application for a dangerous-wild-animal permit. Huntsman claimed that she was exempt from the permitting requirement because she had a permit for a bald eagle issued by the Ohio Department of Natural Resources under R.C. 1533.08. Under R.C. 935.03(B)(10), the permit requirement does not apply to an owner who has been issued a permit under R.C. 1533.08, provided that the permit lists each specimen of wild animal that is a dangerous wild animal or restricted snake in the owner's possession. The ODA notified Huntsman that her bald-eagle permit did not cover any of the dangerous wild animals in her possession and that she was therefore not exempt from the permit requirements of R.C. Chapter 935.

{¶ 11} The ODA learned that in early 2014 and continuing into the spring of 2015, Huntsman had transferred from her farm dangerous wild animals that she had never registered with the ODA. The animals that the ODA learned Huntsman had transferred included a spotted leopard, transferred to a park in Calvert, Texas, on December 18, 2014, a crested macaque, transferred to Smalley Exotic Farm, L.L.C., in Silver Lake, Indiana, on February 4, 2015, and a tiger cub transferred to Wild Acres Ranch in Sandusky, Ohio, on February 23, 2015.

{¶ 12} On March 5, 2015, Huntsman again claimed that she was in the process of obtaining accreditation from the ZAA and was exempt from the permit requirements of the act. She provided the ODA with documentation of the steps that she intended to take in order to obtain ZAA accreditation, including a reduction in the number of animals in her possession. She also voluntarily relinquished some of her dangerous wild animals to the ODA, including four black bears in July 2015, four alligators in September 2015, and two black and two Syrian brown bears in December 2015. However, Huntsman maintained possession of the rest of her dangerous wild animals.

{¶ 13} A brown bear relinquished by Huntsman to the ODA in December 2015 gave birth to cubs while in the ODA's custody. At an unknown time, Huntsman apparently acquired two American alligators in addition to the two she previously registered. In January 2015, Huntsman transported a third Syrian brown bear to Sandusky, Ohio, even though she had previously registered only two of these animals. In November 2015, she transported an unregistered Bengal tiger cub to New York City. And on January 7, 2016, an inspector for the United States Department of Agriculture observed that Huntsman possessed one chimpanzee, two Hamadryas baboons, two pumas, and five tigers, even though she did not have a dangerous-wild-animal permit as of January 7, 2016, had never applied for a permit as of that date, and had not been granted an exemption. The assistant chief of the

Division of Animal Health of the ODA also visited Huntsman's premises and observed the same ten dangerous animals.

{¶ 14} In March 2016, because she had not established that she was exempt from the permit requirements, the ODA delivered to Huntsman a quarantine order it issued under R.C. 935.20. The quarantine order prohibited her from acquiring or removing dangerous wild animals from her premises without approval from the ODA. Huntsman requested an administrative hearing on the quarantine order as allowed under R.C. 935.20 and R.C. Chapter 119; the hearing is currently scheduled for August 22 and 23, 2016.

{¶ 15} On April 1, 2016, the ODA sent Huntsman a letter asking her to provide documentation of her ZAA accreditation status by May 2. On May 2, Huntsman's counsel faxed a letter from Kristi de Spain, executive administrator of the ZAA, denying Huntsman professional membership in that organization. Professional membership is required in order to get the accreditation needed for the exemption.

{¶ 16} On May 4, 2016, the ODA asked Huntsman for permission to enter and search her premises under R.C. 935.19, and Huntsman refused. The ODA then requested and obtained a search warrant from Judge Forchione. During the search, the ODA found a number of animals for which no permits had been issued, and it exercised the director's authority under R.C. 935.20 to implement a transfer order of the dangerous wild animals. The ODA transferred five tigers, two pumas, two baboons, and one chimpanzee from Huntsman's premises. The animals have been in the ODA's legal custody since that time. The chimpanzee is housed in an approved out-of-state facility, and the other animals are housed in the ODA's temporary holding facility and are being maintained according to veterinary standards of care. These animals are defined as dangerous wild animals under R.C. 935.01. One of the tigers gave birth to four cubs while in the ODA holding facility.

{¶ 17} On the day the animals were taken, Huntsman filed a motion for a temporary restraining order and preliminary injunction in the Stark County Court of Common Pleas. Judge Forchione set a hearing on the motion for the next day, May 5, at 8:30 a.m. Counsel for the ODA and Huntsman appeared at the hearing, but no sworn testimony was presented. However, an ODA veterinarian informed the court that the animals would need to be sedated again if they were to be transferred back to Huntsman and that, for medical reasons, that should not happen for two weeks.

{¶ 18} Judge Forchione ordered the ODA to return the dangerous wild animals to Huntsman by May 19, 2016, even though the ODA has never issued her a permit to possess them or determined that she was exempt from obtaining permits under the act.

{¶ 19} The ODA then filed this action seeking a writ of prohibition. It asserts that Judge Forchione has improperly exercised judicial power over the underlying action and that his exercise of that power is unauthorized by law. Further, the ODA asserts that he patently and unambiguously lacks jurisdiction over transfer orders authorized under R.C. 935.20. The ODA asserts that it has no adequate remedy at law if it is forced to defend its decision to transfer Huntsman's animals. The ODA requests a peremptory writ, or if necessary, an alternative writ, to prohibit Judge Forchione from further exercising jurisdiction over *In re Huntsman Transfer of Dangerous Wild Animals*, case No. 2016 MI 138, and an order declaring that Judge Forchione has no jurisdiction over the underlying matter.

{¶ 20} In an amended emergency motion, the ODA has requested that this court issue a ruling by Wednesday, May 18, 2016. Huntsman and Stump Hill Farm filed an emergency motion to intervene, which we granted on May 12, 2016. Judge Forchione and Huntsman and Stump Hill Farm filed their responses to the ODA's amended emergency motion on Friday, May 13, 2016.

**Discussion**

**{¶ 21}** "A writ of prohibition is an extraordinary remedy that is granted in limited circumstances with great caution and restraint." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). To be entitled to the requested writ of prohibition, the ODA must demonstrate that (1) Judge Forchione is about to exercise or has exercised judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 18; *State ex rel. Miller v. Warren Cty. Bd. of Elections,* 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 12.

**{¶ 22}** However, the last requirement need not be established if the lack of jurisdiction is patent and unambiguous. *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480, ¶ 11. We have found a patent and unambiguous lack of jurisdiction and have granted writs of prohibition in previous cases in which courts attempted to bypass special statutory proceedings by agencies that have exclusive jurisdiction over a particular subject matter. *See State ex rel. Albright v. Delaware Cty. Court of Common Pleas,* 60 Ohio St.3d 40, 42, 572 N.E.2d 1387 (1991) (exclusive jurisdiction to consider annexation matters is in county in which hearing on annexation petition takes place); *State ex rel. Taft-O'Connor '98 v. Franklin Cty. Court. of Common Pleas*, 83 Ohio St.3d 487, 488-489, 700 N.E.2d 1232 (1998) (complaints regarding election-law violations must be filed with the Ohio Elections Commission); *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 16, 18, 21 (unfair-labor-practices actions are the exclusive jurisdiction of the State Employment Relations Board).

**{¶ 23}** It is undisputed that Judge Forchione has exercised and intends to further exercise judicial power in the underlying case. So the next issue we need

to resolve is whether the exercise of that power is authorized by law. For the reasons explained below, we hold that it is not. We further find that Judge Forchione patently and unambiguously lacks jurisdiction in the underlying case.

{¶ 24} Judge Forchione argues that he has jurisdiction to grant injunctive relief in this case. He argues that the act uses mandatory language only in some areas and that when permissive language is used, the act does not vest exclusive authority in the director. Specifically, he argues that because R.C. 935.20(A) states that the director or his designee "may" order a quarantine or transfer, the director lacks exclusive authority over the power to quarantine or transfer dangerous wild animals. This argument is without merit.

{¶ 25} The "may" language in R.C. 935.20(A) gives the director discretion to issue quarantine or transfer orders. It does not vest authority to do so in the common pleas courts or in any other entity. No other agency of government, including the courts, has been given authority by the General Assembly to order the quarantine or transfer of dangerous wild animals. R.C. Chapter 935 is a comprehensive statutory scheme regarding the regulation of dangerous wild animals, which vests exclusive authority over such matters to the director of the ODA.

{¶ 26} Huntsman and Stump Hill Farm argue that Judge Forchione has jurisdiction to order the animals returned to them because he is merely reversing his own order. They claim that Judge Forchione has jurisdiction "to order the return of the animals seized pursuant to the search warrant he issued on May 4, 2016." But the animals were not seized pursuant to the search warrant; rather, they were seized under the director's exclusive authority to transfer dangerous wild animals. Huntsman and Stump Hill Farm do not contest that the director has that authority.

{¶ 27} Judge Forchione issued the search warrant allowing the ODA on the premises of Stump Hill Farm. But he did not issue the warrant to seize the animals or to take any other action regarding the treatment of the animals, and indeed, the

face of the warrant makes this clear. The warrant states that it is exclusively for the purpose of entering the Stump Hill Farm property, to search for evidence of a violation of R.C. Chapter 935, including specifically, possession of dangerous wild animals. Additionally, the warrant explicitly states: "Nothing in this warrant shall limit your authority to order the quarantine and/or transfer of any such animals under R.C. 935.20(A)." It is clear from the face of the warrant that it merely authorizes the ODA to enter and search the property and that the ODA retained its authority to quarantine or transfer any dangerous wild animals. Thus, the warrant itself belies the argument that Judge Forchione exercised jurisdiction over the seizure of Huntsman's animals by issuing the warrant and that he may therefore order their return by quashing it.

{¶ 28} In issuing the warrant, Judge Forchione exercised his limited authority to allow the ODA on the premises to search. He had no authority to allow or require the ODA to seize the animals. The discretion whether to seize the animals is conferred by R.C. Chapter 935 exclusively on the director of the ODA. Judge Forchione therefore patently and unambiguously lacks jurisdiction to order the animals' return.

**Conclusion**

{¶ 29} We hold that Judge Forchione patently and unambiguously lacks jurisdiction to order the return of the dangerous wild animals seized from Cynthia Huntsman and Stump Hill Farm. Daniels, as director of the ODA, has exclusive authority to implement and enforce R.C. Chapter 935, including the exclusive authority to order the removal and quarantine of dangerous wild animals being held by an owner without a permit to do so.

{¶ 30} Accordingly, we hereby grant a peremptory writ of prohibition preventing Judge Forchione from exercising any further jurisdiction over *In re Huntsman Transfer of Dangerous Wild Animals*, Stark County C.P. case No. 2016 MI 138. We also order him to vacate his previous orders in the case.

Writ granted.

O'CONNOR, C.J., and LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., not participating.

O'DONNELL, J., dissents and would grant an alternative writ.

O'NEILL, J., dissents with an opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 31} Respectfully, I must dissent.

{¶ 32} Neither this court nor the trial court have sufficient evidence to determine what exactly is happening in this case. For that reason, I would grant only an alternative writ so that this court can make an informed decision.

{¶ 33} But one thing is eminently clear. The Ohio Department of Agriculture ("ODA") sought a search warrant from the court of common pleas. After Cynthia Huntsman asked the same court to intervene and order the return of property seized during the execution of that warrant, the ODA showed up in this court arguing that the court of common pleas "patently and unambiguously" lacks subject-matter jurisdiction over the dispute. The majority holds that the animals were seized under the exclusive statutory authority granted solely to the ODA. But the statute's inclusion of the court of common pleas in the statutory scheme for intruding onto Huntsman's property belies that position. R.C. 935.19(A)(2) and (3).

{¶ 34} Respectfully, I dissent.

_____

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Peter T. Reed, Deputy Solicitor, and James R. Patterson and Lydia M. Arko, Assistant Attorneys General, for relator.

Kevin R. L'Hommedieu, Special Prosecuting Attorney, for respondent.

John L. Juergensen Co. L.P.A., and John L. Juergensen, for intervening respondents.

————————————