[Cite as *Buckeye Relief, L.L.C. v. Ohio Pharmacy Bd.*, 2020-Ohio-4916.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BUCKEYE RELIEF, L.L.C., :

  Plaintiff-Appellant, :

          Nos. 109050 and 109051

  v. :

STATE OF OHIO BOARD OF
PHARMACY, :

  Defendant-Appellee. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 15, 2020

---

Administrative Appeal from the Cuyahoga County Common Pleas Court
Case Nos. CV-19-910093 and CV-19-910094

---

### *Appearances:*

Tucker Ellis, L.L.P., John F. McCaffery, and Katya S. Cronin, *for appellant.*

Dave Yost, Attorney General of Ohio, LaTawnda N. Moore, Associate Assistant Attorney General, and Henry G. Appel, Principal Assistant Attorney General, *for appellee.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Buckeye Relief, L.L.C., appeals the trial court's decision, under R.C. Chapter 119, affirming the State of Ohio Board of Pharmacy's ("board") rejection of

two applications to operate two medical marijuana dispensaries. For the reasons outlined below, we reverse and remand the matter to the trial court with instructions to remand the matter to the board for a reevaluation of the scoring of question C-5.5 under the board's original request for applications ("RFA") process.

{¶ 2} After Ohio legalized the cultivation, processing, testing, and dispensing of medical marijuana, the board was vested with exclusive jurisdiction to license dispensaries as part of the Medical Marijuana Control Program ("MMCP"). R.C. 3796.04. The board created an application process that included an evaluation and rating system meant to winnow the vast majority of applicants seeking a limited number of licenses as authorized under R.C. 3796.05(B). The licenses were divided into four geographic areas evenly segmenting the state, and each of the four was further subdivided into smaller districts. *Id.* The northeast quadrant consists of six districts. The application evaluations were conducted by four teams, with no less than six evaluators per team, or at least 24 evaluators. The teams evaluated 23 questions based on a 0-10 scaling system, and the application included additional questions that were simply pass or fail.

{¶ 3} Buckeye Relief applied to open three dispensaries and claims that the board wrongfully denied two applications for "District Northeast 2," representing Cuyahoga County, for which five licenses were available and awarded. Forty-three other applicants were also denied a license for that particular district. The overall score on the application determined which applicants were to receive a dispensary license. One license was awarded to Greenleaf Apothecaries, L.L.C. (scoring

197.9999 on the entire application), three licenses were awarded to GTI Ohio, L.L.C. (scoring 183.452372 to 184.023801 on its applications), and the remaining license was awarded to Cannamed Therapeutics, L.L.C. (scoring 183.309513). Any applicant scoring below Cannamed Therapeutics was denied a license because of the five-license limit for District Northeast 2. Buckeye Relief's two disputed applications received a score of 182.809515 and 182.309515. Based on that scoring, one of Buckeye Relief's scores was 0.5 of a point below the last qualifier awarded a license in this district.

{¶ 4} In this appeal, Buckeye Relief maintains that it was wrongfully denied two licenses based on an answer provided to a single question on each application.[1] That capital-commitment question (C-5.5 on the application) required each applicant to

> [i]llustrate that the Applicant *has adequate liquid assets to cover all expenses and costs for the first year of operation as indicated in the dispensaries proposed Business Startup Plan* (Question C3). The total amount of liquid assets must be no less than $250,000. Provide documentation from the Applicant's financial institution to support these capital requirements.

(Emphasis added.) The question was in compliance with Ohio Adm.Code 3796:6-2-02(B)(4)(c)(i).

{¶ 5} In its application, Buckeye Relief provided banking records to demonstrate a pledge of $12 million for the three dispensaries it intended to operate

---

[1] Buckeye Relief challenged the evaluations of other questions during the administrative process, but those challenges have been abandoned for the purposes of this appeal.

— thus roughly $4 million in assets was committed for each proposed dispensary. According to those records, 91 percent of the accounts comprised bond holdings. In addition to the pledge, Buckeye Relief possessed $1.5 million in cash reserves for the three proposed dispensaries.

{¶ 6} The scoring on the capital-commitment question was based on a baseline score of 6, if the applicant meets *either* the $250,000 minimum threshold *or* the amount needed to adequately cover all expenses and costs for the first year of operations according to the submitted business startup plan. An applicant's score would be higher by demonstrating that the applicant had capital in excess of $250,000, by showing that the capital exceeded startup costs, and by producing evidence of a stable monthly balance. However, evaluators also considered the lack of evidence demonstrating the ability to support any given response and speculative assets as negatives that detracted from the overall score. The final score for each question was determined by averaging the discretionary scores from the evaluation team.

{¶ 7} For the capital-commitment question, Buckeye Relief had an average score of 7.85714 and 8.00, respectively, on its two disputed applications. (The raw scores from six evaluators for each proposed location were 10, 9, 9, 9, 6, 6. The seventh evaluator gave a score of 6 and 7 to each location, causing the discrepancy in the average score.) According to the published rubric, an overall score of 8 indicates that an applicant's response "meets all requirements and, in some areas, exceeds requirements as stated in the question and associated statutes and rules;

strong supporting evidence with examples where applicable; demonstrated approach shows some additional value that support desired MMCP outcomes." While the average score of the evaluation methodology used to consider the application concluded that Buckeye Relief had exceeded the base requirements, that score is not reflective of the problems associated with the individual scoring process.

{¶ 8} GTI Ohio received an overall score of 8.7 on the capital-commitment question based on documentation demonstrating that it possessed $10.2 million in cash accounts and a $5 million line of credit for five proposed dispensaries — roughly $3 million in cash assets for each location.[2] While GTI Ohio's raw scores of 10, 10, 10, 9, 8, 8, 6 suggested that liquidity alone was not the driving factor behind the capital-commitment evaluation, the scoring of the liquidity factor for Buckeye Relief skewed the final numbers on the capital-commitment score. Receiving the same 8.7 score as GTI Ohio received for a similar pledge of capital would have resulted in one license being awarded to Buckeye Relief instead of Cannamed Therapeutics.

{¶ 9} This is significant because while scoring between GTI Ohio and Buckeye Relief by the evaluators was largely consistent with their scoring of the various applications (only one or two points separated Buckeye Relief from GTI Ohio), the failure to properly score question C-5.5 by three evaluators (#24, #25,

---

[2] Although the parties both claim in the briefing that GTI Ohio received an overall score of 9.1, according to Exhibit G-iii from the administrative record, the score was 8.71429. It appears that the head evaluator testified that GTI Ohio scored a 9.1 on question C-5.5, but the record does not support that assertion.

and #28) adversely affected Buckeye Relief's averaged final score, effectively ending their hope for a license:

| Evaluator | Buckeye Relief (#430) | Buckeye Relief (#133) | GTI Ohio (#493) |
|-----------|----------------------|----------------------|-----------------|
| #23 | 9 | 9 | 10 |
| #24 | 7 | 6 | 8 |
| #25 | 6 | 6 | 10 |
| #26 | 10 | 10 | 10 |
| #27 | 9 | 9 | 9 |
| #28 | 6 | 6 | 6 |
| #29 | 9 | 9 | 8 |

The identities of evaluators #24, #25, and #28 are not known nor are their scoring considerations. Nevertheless, there is no rational explanation for how Buckeye Relief could receive the lowest possible passing score despite demonstrating capital commitment in excess of other applicants, specifically GTI Ohio, which received higher scores on question C-5.5 from two of these evaluators.

{¶ 10} Question C-5.5 required an evaluator to ascertain if the application was able to

illustrate that the applicant has adequate liquid assets to cover all expenses and costs for the first year of operation as indicated in the dispensaries proposed business startup plan (Question C3). The total

amount of liquid assets must be no less than $250,000. Provide documentation from the Applicants financial institution to support these capital requirements.

{¶ 11} The principal point of contention surrounding question C-5.5 and Buckeye Relief's low scores was the fact that bond holdings pledged by Buckeye Relief had put options. A put option permits bond holders the right to redeem the principal of the bond at any time before the bond matures — the lead witness for Buckeye Relief was its president, who testified that the put options were redeemable in three, five, or seven days. In other words, Buckeye Relief claims it could cash out its bonds within at least seven days, and therefore, the account was considered a liquid asset under Ohio Adm.Code 3796:6-2-02(B)(4)(c)(i), a fact that should have been apparent from the documentation presented. It is undisputed that any account balances that are available for withdrawal within 30 days are considered liquid, or cash-like assets, under the Ohio Administrative Code. Buckeye Relief believes the evaluators who gave the baseline scores failed to consider the liquidity of the bond holdings, and therefore, its applications were improperly evaluated.

{¶ 12} After the two disputed applications were rejected, Buckeye Relief requested a hearing pursuant to R.C. 119.12. A hearing officer was appointed, and following a hearing where the board's regional agent in charge of the process testified, the hearing officer issued a report and recommendation. The hearing officer found that (1) the regional agent in charge did not have sufficient knowledge or training to understand Buckeye Relief's financial statements and pledge and was therefore not competent to score question C-5.5; (2) Buckeye Relief's application

vastly exceeded the requirements of the question and received unwarranted low scores, and (3) the board was not able to explain the discrepancies in these scores. The regional agent in charge candidly conceded that he was unaware of the put options on the bond holdings.

{¶ 13} The hearing officer concluded that Buckeye Relief proved that the bonds had put options that made them convertible to cash within five days and that the head evaluator did not know about the put options at the time of his evaluation. According to the hearing officer, this meant that the other evaluators must have scored Buckeye Relief's application too low and it was entitled to receive two licenses if the three lowest scores were raised to a 9 or 10.

{¶ 14} As is required by law, the board independently reviewed the hearing officer's report and recommendation. The board concluded that the hearing officer applied the wrong standard of proof at the hearing. The board felt the standard of proof should be preponderance of the evidence and not the more lenient standard that courts of common pleas use during appellate review under R.C. 119.12 of reliable, probative, and substantial evidence.

{¶ 15} The board concluded that Buckeye Relief had not presented a preponderance of the evidence that the bond holdings had put options nor that the other evaluators based any decision on the liquidity of the bond holdings. Nevertheless, the board had to admit that the bonds at issue, while not immediately liquid just the same as cash, are liquid, cash-like securities. Despite these admissions, the board rejected the hearing officer's findings and exonerated itself.

**{¶ 16}** The hearing officer applied the standard of review as discussed in *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 653 N.E.2d 646 (1995), in which it was concluded that once the state agency establishes that it substantially complied with the request for applications, disappointed bidders must prove that the government agency committed fraud or abused its discretion in awarding the available licenses to other applicants. Buckeye Relief did not object to the hearing officer's reliance on *Danis Clarkco Landfill.* The board disagreed with the hearing officer's report and recommendation and confirmed its decision to award the five licenses to the other applicants.

**{¶ 17}** Buckeye Relief filed an administrative appeal of the board's unfavorable decision. Under R.C. 119.12(M), the trial court may affirm the order of the agency if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. "Reliable" and "probative" evidence is defined as dependable evidence that there is a reasonable probability that is true and such evidence tends to prove or disprove the issue in question. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶ 39. Further, evidence is "substantial" if it has some weight, importance, and value. *Id.* Thus, the trial court conducts two inquires: a hybrid factual/legal inquiry and a purely legal one. As to the hybrid inquiry,

> the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." * * * "Where the court, in its appraisal of the evidence,

determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order."

*Id.* at ¶ 37, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470-471, 1993-Ohio-182, 613 N.E.2d 591, and *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). With respect to the purely legal inquiry, while the reviewing trial court must defer to the agency's findings of facts, it "must construe the law on its own." *Id.* at ¶ 38.

{¶ 18} After its review of the record, the trial court concluded that Buckeye Relief's claim that its accounts met the liquidity definition and that the evaluators misunderstood the financial nuances of put options was conjecture based on the limited evidence presented during the administrative process such that Buckeye Relief could not demonstrate a legally significant reason for discrediting the evidence upon which the board relied. *Id.* at ¶ 37. According to the trial court, the evaluators exercised their honest judgments as demonstrated by the differing ranges of scores Buckeye Relief received on the capital-commitment and other questions. The trial court accepted the parties' contention that *Danis Clarkco Landfill* controlled the agency's standard of review and further relied on *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 590, 113 N.E.2d 14 (1953), and *MCI Telecommunications Corp. v. Bd. of Franklin Cty. Commrs.*, 127 Ohio App.3d 127, 136, 711 N.E.2d 1050 (10th Dist.1998), for the proposition that the exercise of honest judgment does not constitute abuse of discretion irrespective of whether the

judgment is erroneous, and as a result, the board applied the proper standard of review. Based on its review of the record, the trial court concluded that the board's decision was supported by reliable, probative, and substantial evidence.

{¶ 19} Appellate review of the trial court's decision is more limited than the trial court's standard of review except as to issues of law. *Bartchy*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, at ¶ 41, 43. Although "[i]t is incumbent on the trial court to examine the evidence[, s]uch is not the charge of the appellate court." *Id.* at ¶ 41. An appellate court "is to determine only if the trial court has abused its discretion." *Id.* Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm. *Id.*, citing *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970). An "abuse of discretion" means the court's ruling "is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). As is true in general, "[a]n appellate court's scope of review on issues of law is plenary, including whether the common pleas court applied the proper standard of review." *Bartchy* at ¶ 43, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343, 587 N.E.2d 835 (1992).

{¶ 20} In light of the novelty of the statutory and administrative rules under consideration, it bears noting that the legislature enacted a complete and comprehensive statutory scheme governing licensure actions through the MMCP. *State ex rel. CannAscend Ohio L.L.C. v. Williams*, 10th Dist. Franklin No. 18AP-820, 2020-Ohio-359, ¶ 41. This vests the board, as is pertinent to this case, with the

exclusive jurisdiction over medical marijuana dispensary licensing, and all proceedings are conducted in accordance with R.C. Chapter 119. *Id.* The law is codified in R.C. Chapter 3796 and vests the board with the responsibility for evaluating the qualifications for issuing dispensary licenses and the authority to establish rules and standards for such licensure under R.C. 3796.02 and 3796.03. *See id.* Under R.C. 3796.14(B)(1)(b), the board is authorized to "[r]efuse to issue a license." *Id.* Based upon this statutory scheme, the board maintains exclusive jurisdiction for all aspects of the licensure of dispensaries, "including disputes relating to those licensing decisions." *Williams* at ¶ 41. With respect to the burden of proof at the agency level, as set forth under the relevant section of the Ohio Administrative Code, the burden of proving that the applicant for a dispensary license is qualified rests solely with the applicant.[3] Ohio Adm.Code 3796:6-2-04(A).

---

[3] At the agency level as continued throughout this case, the parties cite to *Danis Clarkco Landfill*, 73 Ohio St.3d 590, 653 N.E.2d 646, as providing the foundation of the standard of review under which the board's proceedings were conducted. We note, without rendering any conclusions thereon, that the Ohio Supreme Court's decision in *Danis Clarkco Landfill* was based on a declaratory judgment action involving a bid for services. *Id.* at 596. In other words, the issue in that case focused on a trial court proceeding for injunctive or declaratory relief, not an administrative appeal conducted under R.C. Chapter 119. In *Danis Clarkco Landfill*, the court was faced with determining the standard as applied to the declaratory relief issue. As the Tenth District has concluded, consistent with *State ex rel. Dir. v. Forchione*, 148 Ohio St.3d 105, 2016-Ohio-3049, 69 N.E.3d 636, "no other government agency, including the courts, has been given authority by the General Assembly to issue, suspend, refuse, or revoke a medical marijuana" cultivation or dispensary license. *Williams* at ¶ 41. In such a situation, a disappointed applicant cannot seek declaratory or injunctive relief from an agency's decision because the exclusive jurisdiction to resolve the application issues rests with the board. *Id.* All proceedings surrounding the application for a dispensary license must occur as provided by statute within R.C. Chapters 3796 and 119. Under Ohio Adm.Code 3796:6-2-04(A), the burden of demonstrating that the applicant is qualified to obtain a dispensary license falls entirely on the applicant. In this case, the board was evaluating over 50 applications for five available licenses. Thus, the burden fell on Buckeye Relief to

{¶ 21} We cannot become lost in the fog of averaging score totals or assertions of discretionary scoring where we clearly have a variance of scores based on a misapplication of the criteria. There clearly is evidence that the evaluators did not fully understand the nature of Buckeye Relief's pledged capital. The scores given Buckeye Relief by three evaluators on question C-5.5 were demonstratively wrong and against the board's own evaluation criteria. The board cannot ignore its own criteria and administrative regulations when erroneous scores are entered. Further, it cannot be said these scores do not matter. A change in scoring for question C-5.5 by evaluators #24, #25, or #28 may well have changed the outcome. The fact that other applicants' scores might have changed as well does not diminish or cloud the error of scoring committed on question C-5.5 in this instance by these evaluators.

{¶ 22} In the first assignment of error, Buckeye Relief claims the trial court erred by not reversing the board's decision because the board failed to use a burden-shifting paradigm. Buckeye Relief argues that once it demonstrated that it had met the minimum requirements for a dispensary license, the burden shifts to the board to provide a reasonable explanation for denying the licenses. On this point, Buckeye Relief relies on the argument that its pledged capital exceeded the $250,000 commitment requested, and therefore, as a matter of law, it was entitled to a higher

demonstrate that it was wrongly denied a license that was awarded to another applicant. It is not entirely clear that *Danis Clarkco Landfill* applies to this case's procedural posture if we were to accept the Tenth District's rationale in applying *Forchione*. In light of the fact that neither party has contested the continued viability of *Danis Clarkco Landfill* within these R.C. Chapter 119 proceedings, we need not resolve that issue at this time.

average score than the one received. The trial court abused its discretion in affirming the board's decision, which was contrary to its own standards.

{¶ 23} Under Ohio Adm.Code 3796:6-2-02(B)(4)(c)(i), the capital-commitment question was seeking information addressing whether "the applicant has adequate liquid assets to cover all expenses and costs of the first year of operation for all licenses the applicant is willing to accept, but no less than two hundred fifty thousand dollars, as indicated under the dispensary's current business plan." In addition, the section defined liquid assets to be "capable of being converted within thirty days after a request to liquidate such assets." *Id.*

{¶ 24} Although the administrative scheme set a floor of $250,000, it did not create a per se rule that any applicant that demonstrates liquid assets exceeding that amount was entitled to a perfect score on the capital-commitment question. But it certainly created an inference that an applicant who demonstrated significant liquid assets would be credited with a score higher than the base score of 6. Although the evaluators had discretion to review the financial information along with the business plans to essentially rank the applicant's financial liquidity for the first year of operations on the 0-10 scale for the purpose of comparing applications, they could not ignore or erroneously apply those financial assets. The failure to correct a clearly erroneous score under the board's own criteria equates to a legal error on the board's behalf.

{¶ 25} Despite the board and the trial court's pronouncements, this record establishes that the board improperly considered Buckeye Relief's pledge as inferior

to cash and as insufficient to satisfy the capital requirement, thus misapplying the criteria stated in Ohio Adm.Code 3796:6-2-o2(B)(4)(c)(i). This misapplication of its own standard, one created by rule, constitutes legal error. It must be emphasized that we need not consider Buckeye Relief's argument inasmuch as it claims that the board is required to provide reasons in support of its decision or that there is a burden-shifting standard within the statutory process. Accordingly, the trial court abused its discretion by finding the board's decision to be in compliance with the law.

{¶ 26} In the second assignment of error, Buckeye Relief is seeking the same relief it sought before the trial court — for this court to determine what a reasonable score would be on the capital-commitment question in light of the fact that Buckeye Relief satisfied more than the minimum requirement of $250,000. We decline to make such finding on behalf of Buckeye Relief.

{¶ 27} Our review of questions of fact is extremely narrow. We are limited to reviewing whether the trial court abused its discretion in concluding that the reliable, substantial, and probative evidence supported the board's decision to award the five licenses to other applicants with stronger applications. Although we find the scoring process on question C-5.5 was erroneous, we cannot accept Buckeye Relief's invitation to review and weigh the evidence and assign our own score to one particular question on the application. The question regarding what the specific score should be for Buckeye Relief on question C-5.5 must be determined by the evaluators using the proper criteria they failed to use in the original evaluation

process. What specific score each individual evaluator should have scored the capital-commitment question is well outside the scope of our review.

{¶ 28} Therefore, we cannot say that Buckeye Relief is automatically entitled to a dispensary license in District Northeast 2. Buckeye Relief missed out on a license by only 0.5 and 1.0 point for each respective location (the lowest scoring applicant to have received a dispensary license scored 183.2 against Buckeye Relief's 182.8 and 182.3). Whether they receive a license will have to be ascertained by the evaluators' properly applying the board's criteria to the applications and then calculating valid scores. The fact that other applicants' scores could go up or down in a reevaluation process does not make Buckeye Relief's claims speculative. They demonstrated that up to three evaluators scored question C-5.5 improperly and, as the hearing officer showed, they were entitled to relief.

{¶ 29} The sole issue before the board was whether Buckeye Relief could demonstrate that the board abused its discretion in awarding other applicants a dispensary license over Buckeye Relief's application. Buckeye Relief demonstrated that the scoring process on question C-5.5 as applied to Buckeye Relief was in error. Buckeye Relief's argument does not fail because it is based on a review of its own application, to the exclusion of the other applicants who were awarded a license, or that there were only five available licenses for that particular district. Buckeye Relief established an abuse of discretion and is thus entitled to relief.

{¶ 30} Buckeye Relief has demonstrated that the trial court abused its discretion in affirming the board's decision. *See Bartchy*, 120 Ohio St.3d 205, 2008-

Ohio-4826, 897 N.E.2d 1096, ¶ 41. Regardless of what standard of review the hearing officer, the board, or the trial court applied, Buckeye Relief established the process was flawed and compromised. We therefore reverse.

{¶ 31} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

SEAN C. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
RAYMOND C. HEADEN, J., CONCUR