[Cite as *State ex rel. CannAscend Ohio, L.L.C. v. Williams*, 2020-Ohio-359.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. CannAscend Ohio LLC, et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 18AP-820 |
| v. | | (C.P.C. No. 18CV-1505) |
| | : | |
| Jacqueline T. Williams, Director, Ohio Department of Commerce, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Zeiger, Tigges & Little LLP, Marion H. Little, Jr.,* and *Christopher J. Hogan,* for appellant Schottenstein Aphria, LLC. **Argued:** *Marion H. Little.*

**On brief:** *Squires Patton Boggs (US) LLP, Heather L. Stutz, C. Craig Woods, Christopher F. Haas, Jeffrey M. Walker,* and *Andres H. King,* acting as special counsel to appellee Jacqueline T. Williams, in her capacity as Director of Ohio Department of Commerce. **Argued:** *Christopher F. Haas.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Elizabeth T. Smith,* and *Christopher A. LaRocco,* for appellee Terradiol Ohio LLC. **Argued:** *Elizabeth T. Smith.*

**On brief:** *Peterson Conners LLP, Gregory S. Peterson,* and *Istvan Gajary,* for appellee Cresco Labs Ohio, LLC.

**On brief:** *Mac Murray & Shuster, LLP, Helen M. Mac Murray, Patrick W. Skilliter, and Kari R. Roush,* for appellee Harvest Grows, LLC.

**On brief:** *Buckingham, Doolittle & Burroughs, LLC, James S. Simon, Gregory P. Amend,* and *Andrew J. Pullekins; Murray Murphy Moul + Basil,* and *James B. Hadden,* for appellee Parma Wellness Center, LLC.

**On brief:** *Barnes & Thornburg LLP, C. David Paragas,* and *Jeanine Kerridge,* for appellee Columbia Care OH LLC.

**On brief:** *Taft Stettinius & Hollister LLP, Gregory J. O'Brien, and Devin M. Spencer,* for appellee Grow Ohio Pharmaceuticals LLC.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Schottenstein Aphria, LLC (hereinafter referred to individually as "Aphria"), appeals from a decision of the Franklin County Court of Common Pleas entered on May 17, 2018. The trial court in its decision granted the motions filed by the various 14 defendants-appellees[1] (hereafter referred to collectively as "appellees") to dismiss Counts 1, 2, 3, and 6 of the amended complaint for one or more of three grounds: lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1), failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6), and/or failure to exhaust administrative remedies.[2] For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} This appeal arises from Aphria's unsuccessful application for a level I cultivator provisional license under Ohio's Medical Marijuana Control Program (the "MMCP"). In the underlying matter, Aphria challenged the process by which the Ohio Department of Commerce (the "department") awarded a limited number of level I cultivator provisional licenses ("provisional licenses") and sought declaratory relief from the trial court.

{¶ 3} Appellees argued that Aphria's claims should be dismissed for three reasons: (1) the trial court did not have subject-matter jurisdiction over Aphria's claims as set forth in Counts 1, 3, and 6 (the "licensure claims"), thereby requiring the dismissal of those

---

[1] Defendants-appellees are the Ohio Department of Commerce; Crescso Labs Ohio, LLC; Buckeye Relief, LLC; Harvest Grows, LLC; Terradiol Ohio LLC; Parma Wellness Center, LLC; Grow Ohio Pharmaceuticals, LLC; Pure Ohio Wellness, LLC; B & B Grow Solutions; Columbia Car OH, LLC; iCann Consulting, LLC; OPC Cultivation, LLC; Standard Wellness Company, LLC; and AT-CPC of Ohio, LLC.

[2] The trial court's May 17, 2018 decision became a final, appealable order upon Aphria's filing of a notice of dismissal as to the remaining two counts (4 and 5) of the amended complaint on September 24, 2018.

counts pursuant to Civ.R. 12(B)(1); (2) Aphria had failed to state a valid claim for relief as to monetary damages arising from its tortious interference claim under Count 2, requiring dismissal pursuant to Civ.R. 12(B)(6); and (3) Aphria had failed to exhaust the administrative remedies provided for in the MMCP. Appellees had challenged the trial court's jurisdiction to consider Aphria's claims on two bases: that exclusive jurisdiction over Aphria's claims is vested with the department and that Aphria's claim improperly sought to bypass a specialized statutory scheme for resolving licensure disputes under the MMCP.

## A. Ohio's Medical Marijuana Control Program – R.C. Chapter 3796

{¶ 4}   In 2016, the General Assembly adopted House Bill No. 523 ("H.B. No. 523"), thereby enacting new Ohio Revised Code Chapter 3796 to authorize the use of medical marijuana and to establish the MMCP.   The legislation enacting the MMCP is comprehensive in scope, providing for the cultivation, processing, testing, and dispensing of medical marijuana from beginning to end. R.C. 3796.18 through 3796.21.

{¶ 5}   The General Assembly established the MMCP in the department and the Ohio Board of Pharmacy (the "pharmacy board").   R.C. 3796.02 The department is responsible for licensing medical marijuana cultivators, processors, and testing laboratories.  *Id.*  The pharmacy board is responsible for licensing retail dispensaries and registering patients and caregivers.  *Id.*  Additionally, the State Medical Board is responsible for certifying physicians who are authorized to recommend medical marijuana to patients. R.C. 3796.08.   The MMCP vests the department, the pharmacy board, and the State Medical Board with authority to establish rules and standards for licensure and/or certification of their respective populations.   R.C. 3796.03, 3796.04, and 4731.30.   The General Assembly intended for the department and the pharmacy board to have the MMCP fully operational by September 8, 2018.  2015 Ohio HB 523; s*ee also, e.g.,* R.C. 3796.03, 3796.04, 4731.30.

## B. The Department of Commerce's Role in the MMCP

{¶ 6}  The General Assembly mandated that the department adopt rules establishing standards and procedures for the MMCP not later than September 8, 2017, and adopt rules establishing standards and procedures for the licensure of cultivators not later than May 6, 2017.  R.C. 3796.03(A).  The department was required to adopt its rules in accordance with R.C. Chapter 119.  R.C. 3796.03(A)(3).  The department is authorized to refuse to issue a license or to suspend, revoke, refuse to renew, or impose a penalty on a

license it had issued, but any such action must be taken in accordance with R.C. Chapter 119.  R.C. 3796.14(A); Ohio Adm.Code 3796:5-6-03.

{¶ 7}  The department was authorized to establish (1) the number of medical marijuana cultivator licenses permitted, and (2) the procedures and eligibility requirements for cultivator licensure.  R.C. 3796.03(B).  The department established two categories—level I and level II—of cultivator provisional licenses.  Ohio Adm.Code 3796:1-1-01(A)(23) and (24).  The level I cultivator provisional licenses at issue in the underlying matter allow licensees to operate up to 25,000 square feet of space for marijuana cultivation. The department's administrative rules allowed it to issue up to 12 level I cultivator provisional licenses before September 8, 2018.  Ohio Adm.Code 3796:2-1-01.  Each provisional licensee must pass inspections and conform to certain statutory and regulatory requirements to obtain a final license, a "certificate of operation," which permits the licensee to cultivate medical marijuana.  Ohio Adm.Code 3796:2-1-06(A) and (B).

{¶ 8}  The department began accepting applications for level I cultivator provisional licenses in June 2017.  In November 2017, the department announced it was issuing 12 level I cultivator provisional licenses for marijuana cultivation. Aphria applied for, but not did not receive, a provisional license. In accordance with R.C. 3796.14(A), the department notified Aphria and other unsuccessful applicants that they were entitled to a hearing before the department made a final decision about their applications.  (Ex. A at ¶ 5, Aff. of Frank Tice, attached to Apr. 20, 2018 Mot. for Prelim. Inj.)  Four other unsuccessful applicants (the other plaintiffs in the underlying matter) pursued the special statutory proceeding provided for in H.B. No. 523 and timely requested administrative hearings under R.C. Chapter 119, in accordance with R.C. 3796.14(A).[3]  (Ex. A at ¶ 11, attached to Mot. for Prelim. Inj.)

{¶ 9}  Aphria, however, did not request an R.C. Chapter 119 hearing. (Ex. A at ¶ 11, attached to Mot. for Prelim. Inj.)

---

[3] By letters dated January 11, 2018, the department informed plaintiffs CannAscend Ohio, Appalachia, CannaMed, and PalliaTech Ohio that their requests for hearings had been received, and the hearings had been scheduled for January 22, 2018, but that the MMCP had continued the hearings on its own motion and would contact the four plaintiffs to reschedule.  (Ex. A at ¶ 12, attached to Mot. for Prelim. Inj.)  On February 8, 2018, the department sent a letter to CannaMed advising that a hearing had been scheduled for May 23, 2018. *Id.* at ¶ 16.  The department had not contacted CannAscend Ohio, Appalachia, or PalliaTech about a rescheduled hearing date as of the filing of the original complaint in the underlying matter.  *Id.* at ¶ 15.

{¶ 10} On February 20, 2018, Aphria and five other unsuccessful applicants[4] filed the complaint that initiated the underlying lawsuit against the department (naming Jacqueline T. Williams, in her official capacity as director of the department), 3 of the department's consultants,[5] and 10 of the 12 successful applicants for the provisional licenses.[6]

{¶ 11} On April 2, 2018, Aphria and the other plaintiffs[7] filed an amended complaint, adding one count and naming the other two successful applicants for the provisional licenses.[8]  The amended complaint alleges that the department's process for scoring cultivator applications was "unreasonable, unlawful, arbitrary, and capricious" in nature.  (Apr. 2, 2018 Am. Compl. at ¶ 20.)  The amended complaint contains the following overview of alleged problems with the department 's process:

> Among other things detailed in this Complaint, the Department: (1) failed to adhere to the mandates of Chapter 3796 of the Ohio Revised Code, its own Administrative Rules and application instructions, and the Due Process Clause of the Ohio Constitution; (2) awarded provisional licenses to entities that made material fraudulent and/or misleading representations in the cultivator applications, which were not discovered, but could or should have been uncovered by the Department with reasonable due diligence; (3) awarded provisional licenses to entities that should have been disqualified for failure to meet mandatory provisions of Chapter 3796 of the Ohio Revised Code, but were not disqualified due to the Department's failure to verify or otherwise evaluate information provided in at least some of the Defendants' cultivator applications; and (4) failed to uncover

---

[4] In addition to Aphria, the other plaintiffs named on the amended complaint were CannAscend Ohio, LLC; Appalachian Pharm Products, Inc.; CannaMed Therapeutics, LLC; PalliaTech Ohio, LLC; and Trillium Holdings, Inc.

[5] The consulting entities against which claims are asserted are: Meade & Wing, LLC; B & B Grow Solutions; and iCANN Consulting, LLC (dissolved on January 27, 2018, and is now Trevor Bozeman of Dublin, Ohio).

[6] The successful applicants against whom claims were asserted are: Terradiol Ohio, LLC; Cresco Labs Ohio, LLC; Harvest Grows, LLC; Parma Wellness Center, LLC; and Grow Ohio Pharmaceuticals LLC. Named as nominal defendants were successful applicants Buckeye Relief, LLC; OPC Cultivation, LLC; Riviera Creek Holdings, LLC; Pure Ohio Wellness, LLC; and Columbia Care OH, LLC. Not listed in the caption of original complaint but discussed therein were Standard Wellness Company, LLC; and AT-CPC of Ohio, LLC.  The nominal defendants were included for the purposes of obtaining declaratory relief pursuant to R.C. 2721.12, and no claims were brought against them.

[7] Trillium Holdings, Inc., a named plaintiff on the originally filed complaint, is not a named plaintiff on the amended complaint.

[8] Added as named defendants on the amended complaint are Standard Wellness Company, LLC and AT-CPC of Ohio, LLC.  They were included as nominal defendants for the purposes of obtaining declaratory relief pursuant to R.C. 2721.12, and no claims were brought against them.

> blatant conflicts of interest between the Defendant-consultants, who scored the cultivator applications, and the Defendant-applicants who received a provisional license despite clear conflicts of interest.

(Am. Compl. at ¶ 20.)

{¶ 12} Aphria and the other plaintiffs asserted three claims against the department and one claim against the non-department defendants.[9] Count 1 alleges the department's actions in the licensure process were unreasonable, arbitrary, and/or unconscionable, constituting an abuse of discretion. Count 1 seeks declaratory and injunctive relief to remedy the alleged problems with the process used in awarding licenses.

{¶ 13} Count 2 alleges the department breached an implied contract claim with each applicant that it would fairly consider each bid in accordance with all applicable statutes and regulations. Count 2 also seeks declaratory and injunctive relief.

{¶ 14} Count 3 alleges tortious interference with prospective contractual and business relationships against five successful license applicants[10] and the three entities that scored the applications for the department.[11] Count 3 alleged the non-department appellees improperly interfered with Aphria and the other plaintiffs' ability to obtain cultivator licenses by engaging in conduct that allegedly violated the MMCP statutes and regulations.

{¶ 15} Count 6 alleges the department's conduct in administering the licensing process violated the due process rights of Aphria and the other plaintiffs under the Ohio Constitution. Count 6 seeks declaratory and injunctive relief.

{¶ 16} Aphria and the other plaintiffs sought nine separation declarations, each declaration asserting either (1) provisional licenses were improperly granted because of specific defects in an application and/or general issues with the application and review process, or (2) applications for provisional licenses were improperly denied or disqualified. Aphria and the other plaintiffs also sought preliminary and permanent injunctive relief

---

[9] Not at issue in this appeal are Counts 4 and 5, which asserted claims against the department for violation of Ohio's Public Records Act. As previously noted, Counts 4 and 5 were voluntarily dismissed on September 24, 2018.

[10] Terradiol Ohio, LLC; Cresco Labs Ohio, LLC; Harvest Grows, LLC; Parma Wellness Center, LLC; and Grow Ohio Pharmaceuticals LLC.

[11] Meade & Wing, LLC; B & B Grow Solutions; and iCANN Consulting, LLC (now Trevor Bozeman of Dublin, Ohio).

ordering the department to refrain from issuing a certificate of operation to any of the provisional licensees and to revoke all provisional licenses.

{¶ 17} Each of the 14 appellees filed a separate motion to dismiss Counts 1 through 3 and/or 6.[12] On May 3, 2018, Aphria and the other plaintiffs filed a single memorandum contra responding to all the motions to dismiss. Appellees subsequently filed their reply memoranda.

{¶ 18} Finding the motions had been fully briefed, the trial court issued a 20-page decision and entry on May 17, 2018 (the "decision"), granting appellees' motions dismissing Counts 1, 2, 3, and 6 of the amended complaint. The trial court dismissed the counts on four grounds: (1) lack of subject-matter jurisdiction because the General Assembly had enacted a comprehensive statutory scheme that vested the department with exclusive jurisdiction over the licensing of medical marijuana cultivators; (2) lack of subject-matter jurisdiction because the licensure claims were an attempt to bypass the special statutory proceeding that the General Assembly had prescribed for licensing disputes under the MMCP; (3) failure of plaintiffs to exhaust administrative remedies before commencing suit on their licensure claims, and those administrative remedies were not futile; and (4) to the extent the tortious inference claim sought money damages against non-State defendants, it failed to state a valid claim for relief because the amended complaint did not allege any valid contract or business relationship.

{¶ 19} Counts 4 and 5 of the amended complaint were not subject to any motion to dismiss. On September 21, 2018, a little more than four months after the trial court issued

---

[12] Cresco Labs filed a renewed motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(1) and (6) on April 18, 2018. Buckeye Relief filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6) on April 16, 2018. Harvest Grows filed a motion to dismiss the amended complaint on April 19, 2018. Terradiol Ohio filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and (6) on April 19, 2018. Parma Wellness filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(1) and (6) on April 23, 2018. Grow Ohio Pharmaceuticals filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(1) and (6) and for failure to exhaust administrative remedies on April 23, 2018. Pure Ohio Wellness filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6) on April 23, 2018. B & B Grow Solutions filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(1) and (6) on April 23, 2018. Columbia Care OH filed a motion to dismiss pursuant to Civ.R. 12(B)(6) on April 23, 2018. The department filed a motion to dismiss Counts 1 through 3 and 6 of the amended complaint pursuant to Civ.R. 12(B)(1) and (6) and for failure to exhaust administrative remedies on April 24, 2018. iCann Consulting filed a renewed motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6) on April 24, 2018. OPC Cultivation filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and for judgment on the pleadings as to Counts 1 through 3 and 6 of the amended complaint on April 25, 2018. Standard Wellness Company filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6) on April 25, 2018. Not listed in the trial court's decision is AT-CPC of Ohio's motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6), on April 19, 2018.

its May 17, 2018 decision and entry, Aphria and the other plaintiffs filed with the Franklin County Clerk of Courts a certified copy of the Auditor of State's September 13, 2018 Report and Examination of the Department of Commerce Medical Marijuana Control Program, which found fault with the department's licensure actions. On September 24, 2018, Aphria and the other plaintiffs voluntarily dismissed the remaining two counts, Counts 4 and 5, of the amended complaint without prejudice.

{¶ 20} On October 24, 2018, Aphria filed notice of this appeal.[13]

## II. ASSIGNMENT OF ERRORS

{¶ 21} Aphria presents for our review one assignment of error:

> The trial court erred in granting motions to dismiss and dismissing Counts One, Two, Three, and Six of the Amended Complaint in this matter.

## III.  LAW AND DISCUSSION

### C.  Standard of Review

{¶ 22} The trial court's four grounds for dismissing Counts 1 through 3 and 6 are not governed by a single standard of review. This Court reviews the trial court's decision to dismiss for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) de novo, to determine "whether any cause of action recognizable by the forum has been raised in the complaint." *Sudberry v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-155, 2018-Ohio-5104, ¶ 6, 7.

{¶ 23} We likewise review de novo the trial court's decision to dismiss the money damages component of Aphria's tortious interference claim for failure to state a claim for which relief can be granted under Civ.R. 12(B)(6). *Rooney v. Ohio State Hwy. Patrol*, 10th Dist. 16AP-204, 2017-Ohio-1123, ¶ 13, citing *Ferron v. Dish Network, LLC*, 195 Ohio App.3d 686, 2011-Ohio-5235, ¶ 16 (10th Dist.), quoting *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is procedural and tests the sufficiency of a complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992); *Ferron at* ¶ 16; *Powell v. Vorys, Sater, Seymour and Pease*, 131 Ohio App.3d 681, 684 (10th Dist.1998).  In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or

---

[13] The other four plaintiffs from the underlying matter did not join in this appeal.

evidence outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997). Rather, the trial court must limit its consideration to the four corners of the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus; *Ritchie v. Ohio Adult Parole Auth.*, 10th Dist. No. 05AP-1019, 2006-Ohio-1210, ¶ 16, citing *Singleton v. Adjutant Gen. of Ohio,* 10th Dist. No. 02AP-971, 2003-Ohio-1838, ¶ 18. In such cases, a trial court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1998). The appellate court need not, however, accept as true any unsupported or conclusory legal propositions advanced in the complaint. *Rudd v. Ohio State Hwy. Patrol,* 10th Dist. No. 15AP-869, 2016-Ohio-8263, ¶ 12, citing *Morrow v. Reminger & Reminger Co., LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.).

**{¶ 24}** The standard of review for the third ground for dismissal—failure to exhaust its administrative remedies—is different. While this Court reviews question of law de novo, the dismissal of claims seeking declaratory judgments for failure to exhaust administrative remedies is reviewed for an abuse of discretion. *OMB MST LSCO, LLC v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-223, 2018-Ohio-4843, ¶ 10, 19 ("We see no abuse of discretion on the part of the trial court in concluding that * * * the declaratory judgment action must be dismissed due to appellants' failure to exhaust their administrative remedies."); *SP9 Ent. Trust v. Brauen*, 3d Dist. No. 1-14-03, 2014-Ohio-4870, ¶ 13-14 ("SP9 and S&K's assignments of error challenge the trial court's dismissal of their declaratory-judgment action based on the conclusion that proceeding with the action would have been improper because they failed to exhaust their administrative remedies. We review that decision * * * under an abuse-of-discretion standard.").

**{¶ 25}** Counts 1, 2, and 6 of the underlying matter are explicitly brought under the Declaratory Judgment Act. While Count 3 does not specifically cite the Declaratory Judgment Act, it is based on the same underlying allegations and seeks the same injunctive relief against eight specific, non-State appellees as Counts 1, 2, and 6 seek against the department. Accordingly, this Court reviews the common pleas court's dismissal for failure to exhaust administrative remedies for an abuse of discretion. "An abuse of discretion

consists of more than an error of judgment; rather, it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary." *SP9 Ent.* at ¶ 14.  As Justice O'Donnell of the modern Supreme Court of Ohio has opined, " '[a] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.' " *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 49 (O'Donnell, J., dissenting), quoting *Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999).  Absent an abuse of discretion on the part of the common pleas court, this Court may not substitute its judgment for that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988).

### D.  Assignment of Error

{¶ 26} In the underlying action, Aphria sought to challenge the validity of the process the department used to award level I cultivator provisional licenses under the MMCP through a declaratory judgment action. Aphria contends, essentially, that it would have been awarded 1 of the 12 level I cultivator provisional licenses awarded in November 2017 but for problems with the department's licensing process that were inconsistent with, or in violation of, the department's statutory mandate under the MMCP.  Aphria argues that "[t]he Declaratory Judgment Act is the proper vehicle for asserting that an agency acted arbitrarily and capriciously and abused its discretion in making decisions in a licensing process."  (Aphria Brief at 12.)

{¶ 27} Appellees contend that Aphria is attempting to circumvent the General Assembly's intent as expressed in H.B. No. 523, the well-established process for resolving administrative disputes contained in R.C. Chapter 119, and the department's jurisdiction over the licensing of medical marijuana cultivators.  *See, e.g.,* Ohio Department of Commerce Brief at 1-2.  Appellees stress that Aphria declined to challenge the department's decision denying its application through the process prescribed in H.B. No. 523 for licensing disputes, did not request an administrative hearing pursuant to R.C. Chapter 119, and did not appeal the department's final order denying its application.  Instead, Aphria commenced the underlying action with plaintiffs who had requested, but had not yet received, R.C. Chapter 119 hearings in compliance with H.B. No. 523.  Appellees contend the trial court properly identified Aphria's licensure claims, determined it did not have jurisdiction over those claims and, accordingly, dismissed them.

{¶ 28} Having independently reviewed the record of the underlying matter, studied the briefs, and listened to oral arguments, we recognize Aphria's concerns about alleged flaws in the department's licensing process. However, we conclude the trial court correctly granted appellee's motions to dismiss Counts 1 through 3 and 6 of the amended complaint.

### 1. Subject-Matter Jurisdiction

{¶ 29} A declaratory judgment action is a civil action and provides a remedy in addition to other legal and equitable remedies available. *One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 30, citing *Victory Academy of Toledo v. Zelman*, 10th Dist. No. 07AP-1067, 2008-Ohio-3561, ¶ 8, citing *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 681 (10th Dist.2000). "R.C. Chapter 2721, the Declaratory Judgments Act, is remedial in nature; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and it is to be liberally construed and administered." *One Energy Ents.* at ¶ 30, citing *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134 (1990), citing *Radaszewski v. Keating*, 141 Ohio St. 489, 496 (1943).

{¶ 30} Nonetheless, it is well-established that declaratory judgment actions are inappropriate where special statutory proceedings would be bypassed. In *State ex rel. Albright v. Court of Common Pleas of Delaware Cty.*, 60 Ohio St.3d 40, 42 (1991), the Supreme Court stated:

> Courts of appeals have uniformly held that actions for declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed. *Dayton Street Transit Co. v. Dayton Power & Light Co.* (1937), 57 Ohio App. 299, 10 O.O. 500, 13 N.E. 2d 923; *State, ex rel. Iris Sales Co., v. Voinovich* (1975), 43 Ohio App. 2d 18, 72 O.O. 2d 162, 332 N.E. 2d 79; *Wagner v. Krouse* (1983), 7 Ohio App. 3d 378, 7 OBR 479, 455 N.E. 2d 717; *Beasley v. East Cleveland* (1984), 20 Ohio App. 3d 370, 20 OBR 475, 486 N.E. 2d 859; and *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App. 3d 183, 530 N.E. 2d 928. Each of these actions was decided on direct appeal, not by issuance of a writ of prohibition. However, since it is always inappropriate for courts to grant declaratory judgments and injunctions that attempt to resolve matters committed to special statutory proceedings, their decisions should always be reversed on appeal, except when they dismiss the actions. We find this tantamount to a holding that courts have no jurisdiction to hear the actions in the first place, and now so hold.

{¶ 31} Therefore, "while a declaratory judgment action may provide an additional remedy which may be granted by a court, [it] cannot be used to extend the jurisdiction as to the subject matter upon which a court may act." *Huntsman v. Ohio Dept. of Agriculture*, 5th Dist. No. 2016CA00206, 2017-Ohio-2622, ¶ 30, *citing State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, ¶ 74, citing *State ex rel. Foreman v. Bellefontaine Municipal Court*, 12 Ohio St.2d 26 (1967). "For this reason, a common pleas court cannot use the declaratory judgment statute to decide matters over which it otherwise has no jurisdiction." *Huntsman* at ¶ 30.

### 2. Subject-Matter Jurisdiction – Exclusive Jurisdiction

{¶ 32} Aphria argues that nothing in the MMCP confers exclusive jurisdiction to the department to adjudicate Aphria's claims. Moreover, Aphria relies on the holding of *State ex rel. Banc One Corp. v. Walker*, 86 Ohio St.3d 169 (1999), for the proposition that a government agency has exclusive jurisdiction only when the General Assembly provides such jurisdiction "by appropriate statutory language." *Id.* at 172.

{¶ 33} We disagree. Ohio cases that find exclusive jurisdiction exists do not require language in any particular form but look at the entire statutory scheme of regulation. Ohio courts have consistently held that "where the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency." *Kazmaier Supermarket v. Toledo Edison Co.*, 61 Ohio St.3d 147, 153 (1991). The *Kazmaier* Court upheld the trial court's dismissal of a corporate utility customer's complaint alleging that a utility had charged an improper rate because the Public Utilities Commission of Ohio has complete jurisdiction over the regulation of utility rates. The Court found that the General Assembly had "created a broad and comprehensive statutory scheme for regulating the business activities of public utilities," explaining as follows:

> R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers. As part of that scheme, the legislature created the Public Utilities Commission and empowered it with broad authority to administer and enforce the provisions of Title 49. The commission may fix, amend, alter or suspend rates charged by public utilities to their customers. R.C. 4909.15 and 4909.16. Every public utility in Ohio is required to file, for commission review and approval, tariff schedules that detail rates, charges and classifications for

> every service offered. R.C. 4905.30. And a utility must charge rates that are in accordance with tariffs approved by, and on file with, the commission. R.C. 4905.22.
>
> The General Assembly has by statute pronounced the public policy of the state that the broad and complete control of public utilities shall be within the administrative agency, the Public Utilities Commission. This court has recognized this legislative mandate.

*Kazmaier* at 150-51.

{¶ 34} The *Kazmaier* Court continued:

> In regard to administrative agency exclusivity, generally, this court has recognized that where the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency. *State, ex rel. Geauga Cty. Budget Comm., v. Geauga Cty. Court of Appeals* (1982), 1 Ohio St.3d 110, 113, 1 OBR 143, 146, 438 N.E.2d 428, 431; *see, also, State, ex rel. Northern Ohio Tel. Co., v. Winter, supra*, 23 Ohio St.2d at 9-10, 52 O.O.2d at 31, 260 N.E.2d at 829-830; *State, ex rel. Ohio Bell Tel. Co., v. Cuyahoga Cty. Court of Common Pleas* (1934), 128 Ohio St. 553, 1 O.O. 99, 192 N.E. 787.

*Kazmaier* at 153. With respect to the matter before it, the Court concluded "that in this type of matter involving a dispute inherently arising from charges based upon tariffs filed with and approved by the commission, the General Assembly has granted the commission exclusive jurisdiction to determine the mutual rights and responsibilities of the parties." *Id.* at 154.

{¶ 35} The Supreme Court continues to apply the *Kazmaier* exclusive jurisdiction analysis; *see, e.g., State ex rel. Taft-O'Connor '98 v. Court of Common Pleas of Franklin Cty.*, 83 Ohio St.3d 487 (1998) (granting writ of prohibition to prevent common pleas court from ruling on a complaint about campaign materials because the Ohio Elections Commission has exclusive jurisdiction over claims of fraudulent and false statements in elections communications); *State ex rel. Dir. Ohio Dept. of Agriculture v. Forchione*, 148 Ohio St.3d 105, 2015-Ohio-3049 (granting a writ of prohibition because the Department of Agriculture has exclusive jurisdiction over the regulation of dangerous animals); *Huntsman*, 2017-Ohio-2622 (dismissing an action attacking a decision of the Department

of Agriculture to transfer dangerous wild animals, relying on *Forchione*); *Rocky Ridge Develop., LLC v. Winters*, 151 Ohio St.3d 39, 2017-Ohio-7678 (issuing a writ of prohibition because the permitting matters at issue fell under the Environmental Review Appeals Commission's exclusive jurisdiction).

{¶ 36} *State ex rel. Banc One* does not address the law as stated in *Kazmaier*, where the Supreme Court directs courts to consider the entire statutory scheme of regulation to determine whether the General Assembly has vested exclusive jurisdiction in the agency. More recently, the Supreme Court rejected the argument in *Forchione* that the use of the word "may" in the statute to confer authority upon the agency evidences lack of exclusive jurisdiction:

> The "may" language in R.C. 935.20(A) gives the director discretion to issue quarantine or transfer orders. It does not vest authority to do so in the common pleas courts or in any other entity. No other agency of government, including the courts, has been given authority by the General Assembly to order the quarantine or transfer of dangerous wild animals. R.C. Chapter 935 is a comprehensive statutory scheme regarding the regulation of dangerous wild animals, which vests exclusive authority over such matters to the director of the [Ohio Department of Agriculture].

*Forchione* at 110.

{¶ 37} Aphria also asserts that the trial court is vested with subject-matter jurisdiction over Aphria's claims because Counts 1, 2, and 6 all seek declaratory and/or injunctive relief, notwithstanding the fact that Count 2 is couched as a legal claim for breach of an implied contract. Aphria offers in support of its position the Supreme Court's holding in *BCL Ents., Inc. v. Ohio Dept. of Liquor Control*, 77 Ohio St.3d 467 (1997), that the Franklin County Court of Common Pleas had the power to adjudicate claims brought by a rejected liquor license applicant that the Department of Liquor Control had acted arbitrarily and capriciously in denying the license, even though a statute authorized administrative appeals of department actions to the Liquor Control Commission. (Aphria Reply Brief at 11.) Aphria also cites as support this Court's holding in *Buckeye Quality Care Centers, Inc., v. Fletcher*, 48 Ohio App.3d 150 (10th Dist.1988).

{¶ 38} We find Aphria's reliance on those two cases misplaced. The *BCL* Court observed that "[h]istorically, declaratory judgment actions were permitted against state

agencies, and courts have been deemed to possess jurisdiction to issue injunctive relief." *BCL* at 470; *see, e.g.*, *Racing Guild of Ohio, Local 304 v. State Racing Comm.*, 28 Ohio St.3d 317, 320 (1986), citing *Am. Life & Acc. Ins. Co. v. Jones,* 152 Ohio St. 287 (1949). The *BCL* Court noted, however, that a common pleas court's jurisdiction over declaratory judgment actions is not unlimited, stating:

> We acknowledge that, where the General Assembly has established a complete and comprehensive statutory scheme both creating new rights and prescribing a means to enforce them, review of administrative actions as to those rights may be deemed to be exclusively within the jurisdiction of a statutorily created administrative, rather than judicial, body. *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St. 3d 147, 153, 573 N.E.2d 655, 659 (Public Utilities Commission); *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St. 3d 167, 572 N.E.2d 87 (State Employment Relations Board).

*BCL* at 471.

{¶ 39} Thus, the *BCL* Court recognized that courts must consider the analysis set forth in *Kazmaier* in determining whether exclusive jurisdiction exists. The *BCL* Court held that the Department of Liquor Control did not have exclusive jurisdiction in that matter only after it had concluded that applying the *Kazmaier* doctrine was inappropriate because it would have been "inconsistent with the statutory acknowledgement in R.C. 4301.31 of jurisdiction in the Franklin County Court of Common Pleas to 'restrain [the department from exercising] any power or to compel the performance of any duty under Chapters 4301. and 4303. of the Revised Code." *BCL* at 471.

{¶ 40} Nor are we persuaded by Aphria's reliance on *Buckeye Quality*, which we have previously distinguished, stating that we had merely found that the trial court's dismissal under Civ.R. 12(B)(6) was improper because some allegations in the complaint, though sketchy, met the plaintiff's "initial burden" under that rule. The plaintiff in *Buckeye Quality* alleged that it was continuing to comply with defective rules for fear of losing its Medicaid certification and that it could not disobey the invalid rules without suffering overwhelming, irremediable harm. We acknowledged that, in certain cases, a party need not exhaust administrative remedies to seek declaratory relief, and we found that the situation in *Buckeye Quality* involved circumstances where "if plaintiffs continue

indefinitely to comply with the rules, then they may be forever foreclosed from challenging the rules' adoption." *Id.* at 154. In contrast, in the present appeal, Aphria was not faced with a situation where it might be foreclosed forever from challenging the laws at issue, nor was the trial court addressing a question of sufficiency of allegations under Civ.R. 12(B)(6).

{¶ 41} We find that the General Assembly has enacted a complete and comprehensive statutory scheme governing licensure actions under the MMCP, including medical marijuana cultivator licenses. The law is codified in R.C. Chapter 3796 and vests the department with the responsibility for licensing cultivators and the authority to establish rules and standards for licensure. R.C. 3796.02 and 3796.03. Applications for licenses must be submitted to, and acted upon by, the department in accordance with its promulgated rules. R.C. 3796.09 through 3769.14. Review and challenge of licensure is pursuant to R.C. Chapter 119. R.C. 3796.14. The department is authorized to "[s]uspend, * * * revoke, or refuse to renew a license," to "[r]efuse to issue a license," and to "[i]mpose * * * civil penalty" on a licensee. R.C. 3796.14(B)(1)(a) through (c). Consistent with the holding of *Forchione*, 148 Ohio St.3d. 105, no other government agency, including the courts, has been given authority by the General Assembly to issue, suspend, refuse, or revoke a medical marijuana cultivators license. Based upon this statutory scheme, we find that the General Assembly vested the department with the exclusive jurisdiction for all aspects of the licensure of cultivators of medical marijuana, including disputes relating to those licensing decisions.

{¶ 42} Aphria also asserts that its claims for abuse of discretion, breach of contract, tortious interference, and due process are not within the department's exclusive jurisdiction. In deciding whether claims fall within an agency's exclusive jurisdiction, this Court must determine whether the claims raised in the complaint are within the exclusive initial jurisdiction of the department, or are pure tort or contract claims that do not require a consideration of statutes and regulations administered and enforced by the department. Consistent with the holding of *Kazmaier*, our de novo review must examine the substance of Aphria's claims rather than the mere allegations that the claims sound in tort or contract. *Kazmaier,* 61 Ohio St.3d 147.

{¶ 43} Based on our independent review of the record and the relevant statutes, administrative rules, and caselaw, we conclude that the General Assembly has granted the

department exclusive jurisdiction over the licensing of cultivators under the MMCP and has enacted special statutory remedies for disputes involving those licenses.  Each of Aphria's claims at issue challenge how the department or the non-department appellees violated or failed to comply with the MMCP statutes and regulations.  Accordingly, we find that Aphria's claims fall under the department's exclusive jurisdiction.

### 3.  Subject-Matter Jurisdiction – Bypass of Special Statutory Process

{¶ 44}  Despite the alleged defects in the department's licensing process, we are not persuaded that Aphria was entitled to pursue its concerns via the underlying matter in lieu of the statutory process mandated by the General Assembly.  Aphria could have, and should have, availed itself of the R.C. Chapter 119 process to challenge the department's decision, rather than bypassing it altogether and proceeding directly to the trial court.

{¶ 45}  This Court has long recognized that "[w]here * * * a specialized statutory remedy is available in the form of an adjudicatory hearing, a suit seeking declaration of rights which would bypass, rather than supplement, the legislative scheme ordinarily should not be allowed." *Arbor Health Care Co. v. Jackson*, 39 Ohio App.3d 183, 186 (10th Dist.1987) (finding claims for violations of due process and abuse of discretion and seeking declaratory relief were an improper attempt to bypass a special statutory procedure).  This Court has consistently held that an adjudicatory hearing under R.C. Chapter 119 is a special statutory proceeding.  *Arbor Health* at 185-86 (finding certificates of need are to be filed with the agency, and that any claims related to the grant or denial of a certificate of need are to proceed under the R.C. Chapter 119 special statutory proceeding and ultimate appeal); *State ex rel. Gelesh v. State Med. Bd.*, 172 Ohio App.3d 365. 2017-Ohio-3328 (10th Dist.) (finding R.C. Chapter 119 hearing procedure is a special statutory proceeding warranting dismissal of physician's request for declaratory judgment and injunctive relief); *Aust*, 136 Ohio App.3d 677 (finding R.C. Chapter 119 hearing procedure a special proceeding warranting dismissal of dentist's request for declaratory and injunctive relief). This Court also has opined that "merely because the administrative remedy takes more time than plaintiff desires, is not a sufficient reason to bypass the statutory procedures for review." *Champaign Cty. Nursing Home v. Tomkins*, 10th Dist. No. 98AP-255, 2003-Ohio-1706, ¶ 19-20, 39.  Even where one of a plaintiff's claims or arguments could potentially be considered outside the administrative proceeding, the procedure may not be bypassed.  *Id.*

{¶ 46} This Court's position deferring to the General Assembly's provision for special statutory proceedings is consistent with the view of the Supreme Court that, because "it is always inappropriate for courts to grant declaratory judgments and injunctions that attempt to resolve matters committed to special statutory proceedings, their decisions should always be reversed on appeal, except when they dismiss the actions. * * * [T]his [is] tantamount to a holding that courts have no jurisdiction to hear the actions in the first place." *State ex rel. Albright*, 60 Ohio St.3d at 43.

{¶ 47} Having independently reviewed the record of the underlying matter, studied the briefs, and listened to oral arguments, and consistent with this Court's prior decisions involving similar matters, we find that Aphria's claims are subject to special statutory proceedings. The MMCP requires that applications for licenses to cultivate medical marijuana must be filed with the department. R.C. 3796.09; Ohio Adm.Code 3796:2-1-02. Any challenges to such decisions "shall be taken in accordance with Chapter 119." R.C. 3796.14(A)(1)(c).

{¶ 48} Aphria's claims contained in Counts 1 through 3 and 6 concern the licensing of medical marijuana cultivators and rest on alleged violations of the MMCP statutes and regulations that allegedly deprived Aphria of the ability to obtain a cultivator provisional license. All nine declarations sought by Aphria assert that either (1) level I cultivator provisional licenses were improperly granted because of specific defects in an application and/or general issues with the application and review process, or (2) applications for level I cultivator provisional licenses were improperly denied or disqualified. Moreover, the preliminary and permanent injunctive relief sought would order the department to refrain from issuing a certificate of operation to any of the level I cultivator provisional licensees and to revoke all level I cultivator provisional licenses.

{¶ 49} Based on our interpretation of the MMCP provisions, Aphria is able to present all its arguments in an R.C. Chapter 119 hearing and receive injunctive relief as may be deemed appropriate. If the appropriate remedy is for Aphria to receive a cultivator provisional license, the department has the power to award it. If the appropriate remedy is to revoke all licenses and start the licensing process over, the department has the power to do so. If Aphria is successful in obtaining a cultivator provisional license through that new

process, then its claims for declaratory and injunctive relief against the department would be rendered moot.

{¶ 50} Aphria's claims and requested relief challenge the department's grants and denials of level I cultivator provisional licenses under the MMCP. These matters are subject to the special statutory proceedings of R.C. Chapter 119. Aphria's claims as contained in Counts 1 through 3 and 6 attempt to bypass these special statutory proceedings.

### 4. Exhaustion of Administrative Remedies

{¶ 51} The department argues the trial court did not err in dismissing Counts 1 through 3 and 6 of the amended complaint because Aphria had failed to exhaust its administrative remedies. Aphria in turn argues that going forward under the R.C. Chapter 119 administrative process would have been futile because the department already had issued the 12 available provisional licenses and lacked authority to issue any additional provisional licenses to applicants who had been wrongly denied a license.[14]

{¶ 52} Aphria's assertions notwithstanding, failure to exhaust administrative remedies is an affirmative defense that may be resolved by a motion to dismiss where the affirmative defense is established on the face of the pleadings. This Court has consistently held that a plaintiff's failure to allege exhaustion of administrative remedies is sufficient for dismissal. *See, e.g., Rocky Fork Hunt & Country Club v. Testa,* 120 Ohio App.3d 442, 448 (10th Dist.1997) (granting motion to dismiss based on failure to exhaust administrative remedies); *Oglesby v. Columbus*, 10th Dist. No. 00AP-544 (Feb. 8, 2001) (finding dismissal of breach of contract and interference with contract claims appropriate where plaintiff did not allege in complaint exhaustion of administrative remedies).

{¶ 53} Absent a challenge to the validity or constitutionality of the statute or regulation at issue, declaratory judgment is unnecessary to preserve a plaintiff's statutory rights when the legislature has provided an administrative remedy. *Shoemaker v. First Natl. Bank*, 66 Ohio St.2d 304 (1981).

---

[14] As previously noted, Aphria filed with the clerk of courts' office of the trial court a copy of the Auditor of State's report that was critical of the department's licensing process more than four months after the trial court had dismissed Counts 1 through 3 and 6. We conclude, therefore, that the trial court did not have the opportunity to review the auditor's report before entering judgment in favor of appellees. We also conclude that appellees did not have an opportunity during the pendency of the underlying matter to respond to the findings and conclusions contained in the auditor's report.

{¶ 54} Moreover, "[t]he Ohio Supreme Court has also held that an action for declaratory relief is inappropriate when a plaintiff seeks a determination of statutory rights when she failed to exhaust her administrative remedies." *Huntsman*, 2017-Ohio-2622, at ¶ 41, citing *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146 (1992). The *Huntsman* Court stated further:

> Generally, courts will not entertain proceedings for declaratory relief when "another equally serviceable remedy has been provided for the character of the case at hand." *Swander Ditch Landowners' Assn v. Joint Board of Huron & Seneca County Commissioners*, 51 Ohio St.3d 131, 554 N.E.2d 1324 (1990). The "equally serviceable remedy" in this case is the administrative process contained in R.C. 935.20(D) and further review pursuant to R.C. Chapter 119.

*Huntsman* at ¶ 41.

{¶ 55} This Court has held that an equally serviceable remedy exists if the party's rights may be fully protected through other remedies. *Friends of Ferguson v. Ohio Elections Comm.*, 117 Ohio App.3d 332, 335-36 (10th Dist.1997); *Mack v. Ohio State Dental Bd.*, 10th Dist. No. 00AP-578 (Mar. 31, 2001). We have also held that, for an administrative remedy to be found to be unnecessarily onerous, the plaintiff must demonstrate the administrative remedy "would have necessarily entailed a lengthy or more onerous burden than declaratory judgment proceedings * * * or would force him to incur substantially more expense than the declaratory judgment action." *Aust*, 136 Ohio App.3d at 682. We concluded that the declaratory judgment sought in *Aust* was "merely a substitute for the administrative process provided by the legislature in R.C. 4715.03(D) to determine such questions. Because such administrative process is an equally serviceable remedy, declaratory judgment is not available." *Aust* at 682-83, citing *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 510-11 (1992); *Friends of Ferguson* at 332.

{¶ 56} The exhaustion of administrative remedies does not apply if the process would be futile or a vain act. An administrative process is futile or a vain act where the agency lacks the authority or power to grant the relief requested. *Nemazee v. Mt. Sinai Ctr.*, 56 Ohio St.3d 109, 115 (1990) (finding issue is agency's power and authority to grant relief, not the claimant's likelihood of success).

{¶ 57} The trial court concluded that the R.C. Chapter 119 process available to Aphria was not futile or a vain act. The trial court's decision sets forth in detail the reasoning that supports that conclusion:

> Under the MMCP, an unsuccessful applicant has access to the Chapter 119 process, and is entitled to a hearing before the [department] issues a final decision on its application. RC 3796.14(A); OAC 3796:5-6-03(C). [Aphria does] not allege that [it has] exhausted this administrative remedy process. [Aphria's] claims all rest on issues that would be addressed in the Chapter 119 process, specifically whether the [department] and/or [appellees] complied with the MMCP statutes and regulations. Moreover, as discussed more fully below, the relief sought by [Aphria] is available during that process, specifically the [department] can refuse, revoke, or grant a license. [Fn. 6 omitted] Finally, for the reasons that follow, the [trial court] finds the R.C. Chapter 119 process is not futile or a vain act.
>
> First, [Aphria's] argument that the [department] has supposedly issued a pre-judgment of the outcome of the hearings is without merit. Pursuant to the Chapter 119 process, a hearing will be held and the [department] will make a decision. If that decision is adverse to [Aphria], [Aphria] may appeal that decision to the [common pleas court].
>
> Next, the [trial court] finds that the [department] has the authority to provide the remedies [Aphria] seek[s], which include the non-issuance of certificates of operation and revocation of all provisional cultivator licenses and review of alleged errors in the licensing process. The [department] is required to provide [Aphria] an Chapter 119 hearing with respect to [its] license application.[] Based upon the results of the R.C. Chapter 119 hearing[], the [department] is expressly authorized to issue a license refuse to issue a license, or to revoke a license that was already issued. RC 3796.14(A)(1); OAC 3796:5-6-01(A)(5) and (6). The [department] further has the authority to institute a new round of applications if additional licenses are deemed necessary. OAC 3796:2-1-01(C). The General Assembly has delegated broad authority to the [department] to determine the appropriate process for licensing cultivators and to adopt rules necessary for the MMCP's administration, implementation, and enforcement and to review whether such process was appropriately followed. RC 3796.02, 3796.03(B)(1) and (C), 3796.14(A).
>
> Finally, the [trial court] finds the Chapter 119 process is not untimely. [Aphria] argue[s] the provisional licensees are

> proceeding to take steps necessary to obtain their certificates of operation and build their facilities before [Aphria] can exhaust their administrative remedies. However, the issuance of certificates of operation to other applicants does not preclude the [department]'s authority to grant relief to [Aphria] in [its] Chapter 119 hearings.
>
> [Aphria] focuses on OAC 3796:2-1-01(A), which provides that, until September 8, 2018, the [department] may issue up to twelve level I cultivator provisional licenses. However, this regulation must be considered along with the [department]'s duty to issue licenses based on score and the authority granted to the [department] to administer and implement the MMCP. Specifically, the [department] has a mandatory duty to issue provisional licenses according to the applicants' ranked score (OAC 3796:2-1-04(A)) and the authority to exercise any other power it has been granted pursuant to Chapter 3796 or the rules promulgated thereunder when necessary for the administration, implementation or enforcement of the MMCP (OAC 3796:5-5-01(A)). The [department]'s powers include the authority to suspend or revoke provisional licenses or certificates of operation, or take any other appropriate action, including a new round of scoring or applications. RC 3796.14(A); OAC 3796:5-6-01(A). Pursuant to this authority, the [department] has the power to issue a provisional license to an unsuccessful applicant that establishes through its Chapter 119 hearing that is entitled to receive such a license. The department also has the power to revoke a license improperly granted. The [trial court] finds the [department]'s interpretation of the MMCP statutes and rules in this regard to be reasonable, whereas the [Aphria's] interpretation would be inconsistent with the General Assembly's intent to grant the [department] the authority to have the MMCP up and running by September 8, 2018. *See e.g. Nw. Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 750 N.E.2d 130 (2001) (finding courts are required to give due deference to an administrative interpretation by an agency).

(May 17, 2018 Decision at 14-16.)

{¶ 58} The trial court in its decision discusses a recent decision of the Commonwealth Court of Pennsylvania that addressed similar challenges to Pennsylvania's medical marijuana program. In relating the Pennsylvania case to the underlying matter, the trial court stated:

> *Keystone ReLeaf LLC v. Pa. Dept. of Health*, 2018 Pa. Commw. LEXIS 140 (April 20, 2018), involved challenges to the

Pennsylvania Department of Health's dispensary permit application process pursuant to the Pennsylvania Medical Marijuana Act. Petitioners, unsuccessful applicants, filed, in addition to their request for administrative appeals, a petition challenging the application process. Like this case, petitioners asserted that the Department scored the applications inconsistently and arbitrarily; the Department acted ultra vires in waiving certain statutory and regulatory requirements; the Department's process may be infected by favoritism or bias; and the Department's permitting process should be invalidated in its entirety and previously awarded permits rescinded, because they were awarded pursuant to an unlawful process. *Id.* at *5. The issue before the Court was exhaustion of administrative remedies. *Id.* at *2-3.

Like [Aphria] in this case, petitioners asserted that their claims were exempt from the exhaustion doctrine. *Id.* at *10-12. * * *

The Court held petitioners failed to exhaust their administrative remedies. The Court found that as petitioners did not challenge the constitutionality or validity of the statutes and regulations themselves, but rather challenged the constitutionality and validity of the way the Department interpreted and applied the statutes, the constitutional exception to the exhaustion of administrative remedies did not apply. *Id.* at *18-19. The Court further found that the administrative remedy was adequate. *Id.* at *24-26. The Court reasoned that there was no aspect of petitioners' claims that is not suitable for disposition by the administrative tribunal. *Id.* In fact, since the issues involved the Department's interpretation and application of the medical marijuana program statutes and regulations, and the Department has expertise in the issuance of dispensary permits, the Court found challenges regarding the criteria applied to scoring applications in the permitting process fall squarely within the Department's expertise. *Id.* The Court further reasoned that as there are material factual dynamics involved in evaluating the criteria for scoring permit applications that must be developed in an administrative forum for the Court to determine whether the permitting process violates the medical marijuana statutes and regulations, judicial review without a proper record would constitute a premature interruption of the administrative process. *Id.* Finally, the Court reasoned if Petitioners' administrative appeals succeed, or if a permitee is deemed unqualified, the Department was authorized to grant and revoke permits. *Id.* at *27.

> Like the Court in *Keystone*, this Court finds that [Aphria's] claims are subject to the exhaustion of administrative remedies. [Aphria's] claims do not challenge the constitutionality of the MMCP statutes or regulations themselves, but instead challenge the constitutionality and validity of the way the [department] interpreted and applied the statutes in administering and implementing the license application process. The Court further finds that the administrative remedy is adequate. There is no aspect of [Aphria's] claims that are not suitable for disposition by the Chapter 119 process. In fact, since the issues involve the [department]'s interpretation and application of the MMCP statutes and regulations, and the [department] has expertise in the issuance of cultivator licenses, challenges regarding the criteria applied to scoring applications in that process fall squarely within the [department]'s expertise. [Fn. 7 omitted.] Further, as there are material factual dynamics involved in evaluating the process and criteria for scoring these applications that must be developed in an administrative forum for the Court to determine whether the licensing process violates the MMCP, judicial review without a proper record would constitute a premature interruption of the administrative process. Finally, if [Aphria's] administrative appeal succeeds, or if a licensee is deemed unqualified, the [department] is authorized to grant and revoke [licenses].

(Decision at 16-19.)

{¶ 59} We find the trial court's decision to be well-reasoned and supported by law. Accordingly, we conclude that the trial court did not abuse its discretion when it relied in part on Aphria's failure to exhaust its administrative remedies to grant appellees' motions to dismiss.

### 5. Tortious Interference Claims (Count 3)

{¶ 60} Tortious interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14 (1995). The elements are: (1) a business relationship or prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App.3d 572, 583 (8th Dist.1997); *see*

*also Bansal v. Mt. Carmel Health Sys.*, 10th Dist. No. 10AP-1207, 2011-Ohio-3827, ¶ 29. These same elements are necessary to a claim of interference with a "prospective" business relationship. *See, e.g., Bindra v. Fuenning*, 9th Dist. No. 26489, 2013-Ohio-5722, ¶ 14-16.

**{¶ 61}** To the extent that the tortious interference claims against the non-State appellees in Count 3 seek compensatory damages, the trial court considered whether such claims state a claim upon which relief can be granted. The trial court stated that Aphria was unable to cite to "a single case, in jurisdiction, which has held that a governmental licensing scheme is a business relationship sufficient to support a tortious interference claim." (Decision at 19.) The trial court found that Ohio caselaw establishes that a license is not a contract or property right but a condition precedent to conducting business. *Stouffer Corp. v. Bd. of Liquor Control*, 165 Ohio St. 96, 99 (1956); *State ex rel. Zugravu v. O'Brien*, 130 Ohio St. 23 (1935). The trial court found that Aphria had failed to allege a business relationship sufficient to state a claim for tortious interference.

**{¶ 62}** Aphria asserts that the trial court's finding was in error because the claim for tortious interference was not subject to a heightened pleading requirement. Consequently, Aphria was not required "to plead specific facts establishing existence of prospective contractual or business relationship." (Aphria Brief at 20.) Next, Aphria asserts that the trial court completely ignored "the implied contract between the [department] and [Aphria] to consider license applications fairly." *Id.* at 21. Aphria contends that the non-State appellees improperly interfered with the ability of applicants to obtain a cultivator provisional license by engaging in conduct that allegedly violated the MMCP statutes and regulations. *Id.* Aphria submits that the trial court also failed to apply the Restatement Section 766B standard appropriately to this claim, stating:

> By the Restatement yardstick, a lucrative licensing relationship with the State – especially, as here, a license awarded to a limited number of applicants in a highly competitive bidding process that permits the winners to enter into contracts to grow and sell medical marijuana to other entities in the supply chain – certainly qualifies as "other relations leading to potentially profitable contracts" or "other customary relationship[s] not amounting to a formal contract."

(Aphria Brief at 22.) Finally, Aphria relies on the holding *in S. Christian Leadership Conference v. Combined Health Dist.*, 191 Ohio App.3d 405, 2010-Ohio-6550 (2d Dist.)

("*SCLC*") to assert that a tortious interference claim may stand against a successful bidder in competitive bidding for a business expectancy with a government entity.  (Aphria Brief at 22-24; Aphria Reply Brief at 26-27.)

{¶ 63}  The non-State appellees against which Aphria levied its tortious interference claim argue the trial court properly held that Aphria failed to allege a "business relationship" sufficient to state a claim for tortious interference.  They assert that this missing element was sufficient for the trial court to dismiss this tort claim without analyzing every element of tortious interference.  *See, e.g.,* Terradiol Ohio Brief at 9-10.  They argue further that, if a business relationship were possible, Aphria's claim still fails on other elements.  For example, Aphria did not suffer any injury attributable to the non-State appellees, and the non-State appellees could not have known about Aphria's confidential application, both requirements for a tortious interference claim.  *Id.* at 10.

{¶ 64}  We are not persuaded by Aphria's arguments and find its reliance on *SCLC* insufficient to properly support its argument.  *SCLC* dealt with a monetary grant, not a license.  *Id.* at 415.  The Second District Court of Appeals considered only whether SCLC, a disappointed bidder on a public grant-contract who alleged that the awarding agency abused its discretion in awarding the grant, had standing to bring suit against the awarding agency.  The Second District focused on whether SCLC had pled an injury, not whether a potential contract existed between SCLC and the awarding agency.  *SCLC* never discusses any of the elements of a tortious interference claim.

{¶ 65}  Government agencies throughout Ohio issue licenses to individuals and entities; the issuance of those licenses does not create a contract between the issuing agencies and the licensees.  *See, e.g., Bungard v. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-447, 2007-Ohio-6280, ¶ 24 ("statute are laws and regulations; they are not contracts"); *Duncan v. Cuyahoga Community College*, 8th Dist. No. 101644, 2015-Ohio-687, ¶ 29 ("statutes and regulations do not create 'contracts' between the state and its citizens"); *Quinn v. State Bd. of Real Estate Examiners*, 104 Ohio App. 316, 317 (1956) (a license, much less a prospective and speculative award of a provisional license, does not create an economic or contractual relationship with the state).

{¶ 66}  Additionally, we note that courts reviewing this issue in other jurisdictions have uniformly held that the prospect of receiving a license is not a business or contractual

relationship which can sustain an action for tortious interference. *See Bakri v. Daytona Beach*, M.D.Fla. No. 6:08-cv-1572-orl-28GJK (June 5, 2009) ("Plaintiff avers that Defendants interfered with his 'licensing relationship' with the State of Florida. * * * However this is not a 'business relationship' that has been recognized as supporting the interference tort."); *Asia Invest. Co. v. Borowski*, 133 Cal.App.3d 832, 840-41 (1982) ("[Plaintiff] is unable to assert any business relationship with which there has been tortious interference. * * * The relationship between [plaintiff] and the City cannot be characterized as an economic relationship"); *Itasca v. Lisle*, 817 N.E.2d 160, 352 Ill.App.3d 847, 858 (2004) (allegations of interference with a "government relationship" cannot survive a motion to dismiss because there is no "valid business expectancy"); *Wagner v. Nottingham Assocs.*, 464 So.2d 166, 169, fn. 4, 5 (Fla.App.1985) (stating that it could not find a single case sustaining a tortious interference action where a governmental relationship was alleged to be the advantageous relationship); *Blank v. Kirwan*, 703 P.2d 58, 39 Cal.3d 311, 316-17 (1985) (plaintiff's pleading failed to satisfy the economic relationship element of a claim for tortious interference).

{¶ 67} Aphria also cites procurement cases such as  such as *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, where unsuccessful bidders on publicly bid contracts were permitted to bring a claim for declaratory and injunctive relief to challenge the award of the contract to another bidder.  However, in Ohio disappointed-bidder cases, bidders do not recover on the basis of implied contracts but on promissory estoppel.  *Cardi v. State*, 10th Dist. No. 12AP-5, 2012-Ohio-6157, ¶ 11, citing *Mechanical Contrs. Assn. of Cincinnati, Inc. v. Univ. of Cincinnati*, 152 Ohio App.3d 466, 2003-Ohio-1837, ¶ 23 (10th Dist.).  Aphria's reliance on cases involving the public bidding of contracts or awarding of public grant funding are inapposite because those processes result in a contractual relationship between the successful bidder/applicant and the government entity.

{¶ 68} Based on our review the facts of the underlying matter and the relevant law, we find that no implied contract existed between Aphria and the department.

## IV.  CONCLUSION

{¶ 69} Having independently reviewed the record of the underlying matter, studied the briefs, and listened to oral arguments, we find that the trial court did not err in granting appellees' motion to dismiss Counts 1, 2, 3, and 6 of the amended complaint.  Accordingly,

we overrule Aphria's sole assignment of error.  The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

———————————